# CHARLESTON.

STATE *ex rel.* WM. H. CROY, RELATOR, v. BLUEFIELD WATER WORKS & IMPROVEMENT CO.

Submitted April 21, 1920. Decided April 23, 1920. Opinion Filed April 27, 1920.

1. PUBLIC SERVICE COMMISSION—*Reasonableness of Rules of Public Service Corporation is for Commission Without Judicial Supervision Until Commission Has Acted.*

Whether rules, regulations and practices of a public service corporation subject to the provisions of chapter 15-O, Code 1918, adopted by the company to govern its dealings with its patrons, are unreasonable or unduly discriminatory, are ques-

tions primarily within the competency of the Public Service Commission, and not subject to judicial supervision until that body has had an opportunity to exert its delegated administrative functions.     (p. 262).

2.  MANDAMUS—*Will not Lie to Avoid Discriminatory Rules of Water Company Until Public Service Commission Has Acted.*

    Writ of mandamus sought by a patron of a public service corporation, and averring discriminatory rules and practices by the latter, denied because the matter had not first been submitted to the Public Service Commission.     (p. 264).

    (RITZ, JUDGE, dissenting).

Original proceedings in mandamus by the State, on the relation of Wm. H. Croy, against the Bluefield Waterworks & Improvement Company.

*Writ denied.*

*Russell S. Ritz,* for relator.

*A. G. Fox* and *Sanders & Crockett,* for respondent.

LYNCH, JUDGE:

In this proceeding petitioner William H. Croy, a citizen and resident of the City of Bluefield, seeks. a writ of mandamus to compel the Bluefield Water Works & Improvement Company, a corporation engaged in the service of the public, to furnish water for use on his premises.     Desiring to avail himself of such service, petitioner heretofore made application therefor to the company and the latter thereupon provided and installed a meter in front of and near his property line, the connection between the company's mains and fixtures and petitioner's service line to be made by him.     For the purpose of making such connection he employed Eugene E. Keith, a licensed plumber of the City of Bluefield, who performed the work apparently in a satisfactory manner; at least, there is no complaint of its efficiency for all purposes.     But because he was not a plumber specially licensed by the respondent to perform such work, the latter declined and refused to turn its water into petitioner's line; wherefore he prayed for and obtained this alternative writ requiring the company to perform that service.

The chief ground relied on in support of the writ is the alleged unreasonable and discriminatory nature of respondent's

rules, upon which it based its refusal to do the act complained of, which prohibit any one other than an authorized employee of the company or a plumber specially licensed by it, as provided in rule 55, to perform such work, and authorize its officers and agents to refuse to furnish the water to any consumer who engages a plumber not so employed or licensed.

Whatever may be the proper view and decision upon the merits of the question so presented, we are of opinion that the reasonableness or unreasonableness of the rules just referred to should first be submitted to the Public Service Commission for investigation and determination. The purpose of the act creating that body and subjecting to its jurisdiction and control all public service corporations therein designated was to provide prompt, adequate and efficient supervision and regulation of the functions and management of such utilities, in the interest both of the public and of the companies, and to safeguard each from unjust treatment by the other. The act recognizes and contemplates that the utilities affected, after the manner of businesses dealing generally with the public, will by proper rules and regulations define and specify the manner and method to be employed in their relations and dealings with patrons. In order to secure reasonable and uniform regulations and practices by such utilities in dispensing their service, section 7 of the act (chapter 15-0, Code 1918) makes it unlawful for any such company to make or give any undue or unreasonable preference or advantage to any particular person, firm or corporation, or to subject them to any undue or unreasonable prejudice or disadvantage. Section 5 empowers the commission to investigate all methods and practices of utilities subject to the act and to change or prohibit any practice, device or method of service in order to prevent undue discrimination or favoritism. Section 21 authorizes the commission at any time to require companies subject thereto to furnish any information in their possession respecting rates, charges or practices in conducting their service. And section 23 of the act specifically provides that "whenever, under the provisions of this act, the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, insufficient, or unjustly discriminatory, or otherwise in violation of any provisions of this act, * * * the

commission shall determine and declare, and by order fix, reasonable measurements, regulations, acts, practices or service to be furnished, imposed, observed and followed in the state in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory, inadequate or otherwise in violation of this act; and shall make such other order respecting the same as shall be just and reasonable." .

The purpose thus disclosed by the legislature in enacting chapter 15-0 of the Code was to create a supervisory and administrative body and invest it with some of its own supervisory authority, in order to exercise general regulatory power over such utilities.   The provisions of the act clearly disclose an intention to submit to the determination of the commission questions relating to the reasonableness or unreasonableness of the rules and practices of the companies, and until that body acts there is no occasion or reason for interference or intervention by this court by its mandatory process.

The relation existing between the Supreme Court of the United States and the Interstate Commerce Commission is analogous in many respects to that between this court and the Public Service Commission, and rules of procedure adopted and followed in the one instance have persuasive influence in determining the propriety of the procedural course to be followed in the other, at least in the absence of other determinative factors.   In *B. & O. R. Co.* v. *Pitcairn Coal Co.,* 215 U. S. 481, the United States Supreme Court held that regulations by a carrier respecting the distribution of coal cars to shippers, alleged to be unreasonable and discriminatory, being primarily within the competency of the Interstate Commerce Commission, were not subject to judicial supervision until that body had properly been afforded an opportunity to exert its administrative functions. The rule requiring preliminary action to be taken by the body charged with such administrative functions was first announced in *Texas etc. Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, where the question in issue concerned the reasonableness of freight rates fixed by the carrier and included in its published tariffs.   In the Pitcairn Coal Company case this rule was extended to include not only questions respecting the reasonableness of rates, but also of rules and practices adopted and fol-

lowcd by the companies in their dealings with patrons. There, as here, the complainant sought by mandamus to avoid the inconvenience and business loss incident to an enforcement by the carrier of its rules respecting the distribution of cars, but the court reversed the judgment of the Circuit Court of Appeals awarding the writ, and dismissed the petition. The principle there announced has been followed in subsequent cases involving the reasonableness or discriminatory nature of rules and regulations of carriers (*Morrisdale Coal Co.* v. *Pennsylvania R. Co.,* 230 U. S. 304; *Pennsylvania R. Co.* v. *Clark Bros. Coal Mining Co.,* 238 U. S. 456), and also in cases raising other questions primarily within the administrative jurisdiction of the Interstate Commerce Commission. *Robinson* v. *B. & O. R. Co.,* 222 U. S. 506, affirming 64 W. Va. 406; *United States* v. *Pacific & Arctic etc. Steamship Co.,* 228 U. S. 87; *Mitchell Coal & Coke Co.* v. *Pennsylvania R. Co.,* 230 U. S. 247; *Texas etc. Ry. Co.* v. *American Tie & Timber Co.,* 234 U. S. 138. See also *Skinner & Eddy Corporation* v. *United States,* 249 U. S. 557, 562.

Petitioner insists, however, that under section 3, Article 8 of the State Constitution, giving to this court original jurisdiction in cases of mandamus, we have no authority to compel him first to submit his claim to the Public Service Commission. In this contention, however, he confuses the existence of jurisdiction and the exercise of such jurisdiction. That we possess original jurisdiction in mandamus proceedings is unquestioned, but it is also true that the award of that writ lies within the sound discretion of the court, where the right thereto is not clear, and where there is available another remedy specially designated for the ascertainment of the facts upon which the right depends and equally efficacious. The mere filing of a petition for such a writ does not ex proprio vigore entitle petitioner thereto. As an element in the exercise of that discretion some regard must be had for the method of procedure intended by the legislature to be followed in such cases and clearly disclosed by the Public Service Commission Act. The administrative body created by it is expressly intrusted with power and authority, and specifically directed, when it finds any practice or regulation to be unreasonable or discriminatory, to determine, declare and fix reasonable practices and regulations in lieu thereof. The duties

of its members are such as require them continually to deal with
rules and regulations governing the service furnished by such
utilities, and hence afford them opportunities to observe and as-
certain the beneficial or harmful effects of such practices.   Such
was the conclusion reached by the United States Supreme Court
in the Pitcairn case, and others cited.

It may be argued, however, that that court has no original
jurisdiction in mandamus proceedings, while this court has.
That may be true, but the United States Supreme Court does
have appellate jurisdiction in such matters.   In the case cited
the court sat as an appellate court reviewing the judgment of
the Circuit Court of Appeals awarding the writ, and its jurisdic-
tion upon that occasion with respect to the award of the writ
was as complete as the original jurisdiction conferred upon this
court.   But the court, in its discretion, declined to exercise the
jurisdiction which it possessed and instead dismissed the writ
and required petitioner first to prosecute his claim before the
commission.   So here there is undoubted original jurisdiction,
but the exercise thereof is within the sound discretion of this
court.   Therefore, because of the clearly disclosed intent of the
legislature that such administrative matters be considered and
determined in the first instance by the Public Service Commis-
sion, and for the further reason that the hearing before the
commission, where evidence may and doubtless will be intro-
duced upon the issue of the unreasonableness of the regulations
involved, will tend to clarify and render apparent the true
merits and demerits of the rules assailed, and in a more satis-
factory manner than here where the question is presented merely
upon petition and return, without evidence, it is our opinion that
we should not exercise at this time the jurisdiction which we
possess, but await the determination of the commission with re-
spect to the issue involved.   The language of Mr. Justice White
in the Pitcairn case is peculiarly appropriate here:   "A par-
ticular regulation of a carrier engaged in interstate commerce is
assailed in the courts as unjustly preferential and discrimina-
tory.   Upon the facts found the complaint is declared to be well
founded.   The administrative powers of the commission are in-
voked concerning a regulation of like character upon a similar
complaint.   The commission finds, from the evidence before it,

that the regulation is not unjustly discriminatory. Which would prevail? If both, then discrimination and preference would result from the very prevalence of the two methods of procedure. If, on the contrary, the commission was bound to follow the previous action of the courts, then it is apparent that its power to perform its administrative functions would be curtailed, if not destroyed. On the other hand, if the action of the commission was to prevail, then the function exercised by the court would not have been judicial in character, since its final conclusion would be susceptible of being set aside by the action of a mere administrative body." (pp. 494, 495).

Nor does the requirement so to apply to the commission result in any waiver of the right to resort to this court for protection or unduly postpone the exercise of such right. The power still exists. There is no waiver, no impairment, no denial, no question as to its existence or competency when properly and seasonably invoked. Should the commission erroneously refuse to consider the claim for redress when presented to it, or rule adversely to the contention of the relator, section 16 of the act affords him ample opportunity for the redress of the grievance, if any. The commission will no doubt act with reasonable promptness upon his petition. There is no substantial basis for conjecture to the contrary. The commission is composed of men of ample capacity and business sagacity and will act fairly and justly and with all convenient dispatch in emergent cases.

For these reasons we deny the writ.

POFFENBARGER, JUDGE, *concurring.*

In my opinion, the Public Service Commission is *pro hac vice* the Bluefield Water Works & Improvement Company. It is such as to complaints of invalid rules and practices. The statute puts it in control of that company and all others of its general class, for correction of abuses. Code, ch. 15-0, sec. 10. No man has ever been awarded a writ of mandamus for enforcement of a public duty, without having previously demanded performance thereof, except in instances in which positive law required performance of duty on or before a certain date or event, and the duty was purely public in its nature. This proposition is elementary. This case belongs to a class in which the remedy

sought is available only after a previous demand for performance of the duty neglected or withheld. Such a demand is not ultimately and finally made, nor sufficiently made to warrant an application to this or any other court for a writ of mandamus, until it has been made upon the Public Service Commission, when the right is one against a public service corporation. Technically, therefore, the writ is not now properly applied for here.

It is upon this theory that the statute requiring such preliminary action or procedure can be sustained, without impairment or limitation of the jurisdiction of the courts to enforce performance of such public duty, or encroachment upon such jurisdiction, and without making the writ of mandamus a discretionary remedy. Courts were not ordained to give relief that may be readily obtained without their aid, and the Legislature has ample authority to regulate judicial procedure. Of course, it cannot deny to a citizen his constitutional right to resort to the courts for redress of grievances, requiring judicial action. But, within reasonable limitations, it may regulate the exercise of such right and mark out the course of procedure. The policy of regulation for settlement of controversies and redress of grievances, without litigation, in so far as these results may be accomplished without material restriction of the constitutional right, or interference therewith, is a commendable one. In most of the jurisdictions, the courts are overburdened with business, to such an extent as to cause delay in the settlement of matters which cannot be determined without their aid. Regulations leading to adjustments without litigation save time for controversies necessarily requiring it, as well as costs and expenses.

Besides, it is a principle widely recognized in the law. There can be no action upon a demand obligation until demand has been made. A stockholder of a corporation is never allowed to come into court for relief in respect of his rights in the corporation, until after he has exhausted the remedies afforded him by its organization and by-laws. He must first make a sufficient demand upon the corporation itself, or show that it would be unavailing. A member of a beneficial society must take like action as a step preliminary to his right to sue. So must a mem-

ber of a political party. No doubt there are many other instances of the application of the general principle. Is it possible that the Legislatue may not impose a regulation based upon a principle so firmly imbedded in jurisprudence and so all-pervading?

Respecting the right of a citizen under an express constitutional guaranty, it has been uniformly held that a legislature may change remedies, and abolish one when two or more exist, even though the remaining remedy may be less convenient or less prompt and speedy than the one abolished. Cooley Con. Lim. 406. "Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct." Ch. J. Marshall in *Sturges* v. *Crowninshield,* 4 Wheat. (U. S.) 122, 200. "As a general rule, every State has complete control over the remedies which it offers to suitors in its courts. It may abolish one class of courts and create another. It may give a new and additional remedy for a right or equity already in existence. And it may abolish old remedies and substitute new: or even without substituting any, if a reasonable remedy still remains." Cooley Con. Lim. 515-16. No citizen has vested right in any particular remedy.

The statute as here construed does not interfere with the jurisdiction of the court at all. It operates upon the public service corporations and their patrons. These public utilities are amenable to legislative regulation and control. Such control of them incidentally, but necessarily, involves regulation or prescription of the rights of citizens dealing with them. The legislature can say, in the interest of the general public, that they shall not be unnecessarily sued and otherwise proceeded against in the courts, and, to that end, that demands upon them by patrons or citizens for due and legal performance of their duties shall be made upon a designated representative or supervisor, before there can be any resort to the courts for enforcement of the rights claimed, whatever their nature may be. The legislative power of regulation and the representative status of the Public Service Commission have been affirmed by this court in *City of Benwood* v. *Public Service Commission,* 75 W. Va., 127 and other cases.                                                    *Writ Denied.*

RITZ, JUDGE, (*dissenting*) :

The writ of mandamus was sought in this case to compel the respondent to furnish water to the relator in his residence in the city of Bluefield. The respondent declined to furnish water to the relator upon his demand, for the reason that he had not complied with one of its rules providing that it would not furnish water to any inhabitant unless the plumbing in the house was done by it. It is not contended that the relator's plumbing is not entirely sufficient, or that the plumber who put it in, who was licensed by the public authorities, was not entirely competent, but the denial is based entirely upon the attempt to destroy the monopoly in the plumbing business sought to be set up by the respondent under that rule. This Court has seen fit to deny the relator relief upon the ground that he must first apply to the Public Service Commission. I cannot assent to this conclusion. The rule or regulation set up to justify the refusal in this case is not a rule having any relation to the conduct of the respondent's business. It is simply an attempt on its part to create in itself a monopoly in the plumbing business. I freely admit that where a public service corporation has made a rule for the control or management of its affairs which may or may not be proper, depending upon an investigation, the Public Service Commission must first be called upon to make such investigation and to furnish the relief, but where the rule invoked in justification of its refusal to perform its duty is absolutely void, and could not be prescribed by any power or authority there is no necessity for resort to the Public Service Commission to have it so declared. It is fundamental that even void legislative acts need not be regarded by courts or individuals, much less regulations of a public service corporation which are manifestly beyond their power to make. I do not know whether the majority of the Court holds that even a void regulation will deprive the courts of their jurisdiction to sue a public service corporation, or that the regulation invoked here is one that might or might not be proper, depending upon an investigation of the facts. I am, however, clearly of the opinion that the regulation relied upon here as justifying the refusal to furnish water is an absolutely void one, and that it can be disregarded by anyone seeking

relief. In other words, the fact that such a regulation is made, if it is void, creates no different situation than if no such rule had ever been prescribed, and admittedly in that event the writ of mandamus would be available. If the majority of the Court in this case means to hold that any regulation prescribed by a public-service corporation, no matter how ridiculous or bizarre, will deprive the courts of their jurisdiction to entertain suit against it, then it lies within the power of such corporations, by simply making regulations, to withdraw itself and its property from the jurisdiction of the court until after resort to vexatious and expensive proceedings to avoid its unreasonable and void rules and regulations. If, on the other hand, the majority means that the regulation relied upon in this case may or may not be a reasonable one, depending upon an ascertainment of the facts upon an inquiry to be made, I cannot agree with that conclusion. My view of this rule is that not only could it not be prescribed by this public service corporation, but there is no power within the state, not even the Legislature, that could lawfully prescribe such a regulation. To sustain this rule would uphold the right of this corporation to create monopolies in itself in all kinds of business within the territory wherein it operates. It could just as well say that it will not furnish water to any house unless the same has been constructed by it, or that it will not furnish water to the inhabitant of any house unless he has purchased from it the lot upon which the same has been erected. It will be said' that such rules would be ridiculous, and I agree that they would be, but no more so than the one invoked here.

I would award the writ, notwithstanding the rule invoked, for the reason that in my view it is absolutely void, and of no effect, and is not such a regulation as the corporation has or could be given power to prescribe.