# CHARLESTON.

CITY OF BLUEFIELD *v.* PUBLIC SERVICE COMMISSION *et als.*

Submitted June 6, 1923.   Decided June 19, 1923.

1.  WATERS AND WATER COURSES—*Public Service Commission Held Without Jurisdiction to Require Water Company Operating Under a Municipal Franchise to Relocate its Water Pipes.*

    Chapter 15-0 of the Code, which creates the public service commission and defines its powers and duties, does not give the commission jurisdiction to require a water company furnishing to the public water under a municipal franchise under which it has laid its mains and service pipes in the streets, to relocate its pipes so laid in order to avoid electrolysis of its pipes claimed to be caused by the subsequent operation of an electric street car line over the streets, in order to prevent damage to the streets from frequent repair of its pipe lines.   (p. 335).

2.  ELECTRICITY—WATERS AND WATER COURSES—*Public Service Commission Without Jurisdiction to Compel Water and Electric Railway Company Using Street Under Franchise to Improve Respective Plants or so Operate as to Prevent Damage to Streets.*

    The public service commission does not have jurisdiction on the petition of a city, to compel a water company and an electric railway company using the streets under franchises from the city for their respective purposes to order them to improve their respective plants or so operate them as to prevent damage to the streets; there being no question raised as to the adequacy of the service or reasonableness or justness of the rates or tolls charged.   (p. 339).

3.  MUNICIPAL CORPORATIONS—*Public Service Commission has no Jurisdiction to Usurp or Interfere With Police Power of Municipality in Control of Streets.*

    The plenary power and authority given to municipalities by their charters and by general law to lay out, pave and

keep in good repair the streets free and clean for the security
and convenience of the public and to prevent damage thereto
by public service corporations licensed to use them, has not
been impaired by the public service commission act; nor has
the public service commission jurisdiction to usurp or inter-
fere with the police power of a municipality in the control
of its streets. (p. 343).

Appeal from Circuit Court, Mercer County.

Proceeding by the City of Bluefield against the Bluefield
Waterworks & Improvement Company and another, before
the Public Service Commission. From an order of
the Commission dismissing the proceeding. The City ap-
peals.

*Order of suspension refused.*

*Russell S. Ritz,* for petitioner.

*Sanders, Crockett & Fox,* for respondents.

LIVELY, JUDGE:

Upon consideration of the petition or complaint of the city
of Bluefield, the separate demurrers and separate answers
of the Bluefield Water Works and Improvement Company
and the Princeton Power Company, and the evidence, the
public service commission came to the conclusion that it had
no jurisdiction to hear and determine the matters set up and
alleged in the complaint, and ordered that the same be dis-
missed and the case stricken from its docket. From this
order the city of Bluefield has taken this appeal.

The only question here is whether the public service com-
mission had jurisdiction to try and determine the matters
set up in the petition or complaint and developed by the
evidence. If the commission had jurisdiction to hear and
determine the complaint its order would be set aside by this
court and the case remanded for decision upon its merits. If
the matter falls within the jurisdiction of the commission
this court cannot pass upon the controversy except upon an
appeal from the order of the commission after it has de-
cided the case upon its merits. *Kelly Axe Mfg. Co.* v. *United
Fuel Gas Co.,* 87 W. Va. 368; *State ex rel Croy* v. *Bluefield*

*Water Works & Imp. Co.* 86 W. Va. 260; 103 S. E. 340. The petition of the city of Bluefield setting out its complaint filed with the commission is against the Bluefield Water Works and Improvement Company and the Princeton Power Company, which it alleges are public service utilities operating under franchises from the city and subject to the provisions of chapter 15-0 of the Code (the public service commission act). The substance of the complaint is that the city is about to permanently pave its streets with modern and expensive pavement; that heretofore the water works company has been cutting numerous holes in the pavement to repair leaks in its water pipes thereunder, more especially through the pavement on Bluefield avenue, one of the principal streets in the town, over which extensive traffic is carried; that, if the water company is permitted to continue to cut through the pavement for that purpose the permanent paving which the city contemplates putting down will be greatly impaired or permanently destroyed; that the cause for cutting these holes can be removed; that the water company claims a large number of its leaks (especially on Bluefield avenue) are caused by an electric current which reaches its pipes from the operations of the power company which operates its electric trolley line over the avenue and the other streets of the city causing electrolysis of its pipes, and that by a proper bonding of the rails of the power company the cause of the electrolysis may be entirely removed or greatly minimized. Petitioner says it desires that these two public service utilities should operate their properties so as to prevent or minimize the leaks in the pipes and reduce the number of holes to be made in the proposed permanent improving of the streets; that if by requiring the water company to relocate its mains or pipes, or the power company to bond its rails this may be accomplished, or whatever else is necessary, the city asks it to be done by order of the commission. That the city has communicated the facts it has found to defendant (no facts are stated in the petition which it has communicated), "but the only answer it has been able to get from either of said utilities is a complete denial on the part of the Bluefield Water Works and Improvement Company of the existing

causes which are claimed to attribute to this trouble and a promise of only good intentions from the Princeton Power Company, with the result the paving season is here and the city unable to proceed with its program of improvements, due to the negligence of these two utilities.'' That, under present conditions the new pavement, if laid, will be greatly impaired or destroyed; that the cause of the leaks can be entirely eliminated or greatly reduced, but that both utilities refuse to cooperate with each other in finding the cause, and remove the source to relieve the city. The prayer is that upon an investigation as to the causes which produce the unusual number of water leaks, the utilities, either or both, be required to improve, change and modify their plants and properties so as to entirely remove the cause or minimize the same; and for general relief.

It will be seen that the substance of this complaint is that the water company has been cutting holes in the pavement for the purpose of repairing its pipes and will continue to do so to the great detriment of the permanent pavement when made, unless the cause for the leakage in the pipes be removed; that the water company had claimed that the cause was electrolysis of its pipes brought about by the escape of electricity from the power company's trolley system and that the cause could be entirely removed or minimized by bonding the rails of the trolley company; that the utilities refused to cooperate with each other and remove the cause of the leakage in the pipes; and the commission is asked to make an investigation of the cause, and when found, make the utilities remove the same; and if the cause be electrolysis then that the water works company be made to relocate its pipes or the power company to bond its rails, and thus protect the permanent improvement of the streets which the city proposes to make.

There is no question involved of adequate service to the customers of these utilities nor of adequate facilities or of the reasonableness of the rates charged. There is no allegation that the patrons of either of the public utilities are being subjected to inconvenience, delay or damage. The city has called upon the commission to make an investigation of

its complaint and as a result thereof that such remedy be applied as it, the commission, may deem necessary in order to protect the city against damage to its streets. The scope of the inquiry was confined to the matters set up in petitioner's complaint; and no claim of inadequate service, unjust rates, dangerous practices or facilities, or oppressive or discriminatory rules or practices developed in the proceeding. *B. & O. Ry. Co.* v. *Pub. Ser. Com.,* 90 W. Va. 1.

The power company in its answer says that it is advised that the water company does not claim that the electrolysis of its pipes is caused by the electric current transmitted from the railway equipment, and it says that if any such electricity is transmitted to the pipes of the water company it does not come from its equipment; that there are a large number of public utilities in the city which generate or use electric currents in the service of the public, namely, the Appalachian Power Company, the Norfolk & Western Railway Company, a telegraph and a telephone company, and that if any damage is caused to the pipes from electric current it may be caused by electricity transmitted from any or all of the companies using high voltage electricity in the city; that it has employed and is now employing standard appliances and equipment and has been steadily engaged in repair work and improvement since the property came into its possession, and that since December, 1920, it has installed 2182 electric railway bonds on its track where tests disclosed that the former bonding was not efficient, and that it is doing all in its power to avoid leakage of its current from its track and equipment, which current it purchases from the Appalachian Power Company, any part of which it cannot afford to lose, for economic reasons; and it now avers that at the time of the hearing before the public service commission it had installed 2461 bonds on its rails, and since the hearing had placed 531 additional bonds, making a total of 2992 bonds installed since the 1st day of January, 1923. The water company answers, and sustains its answer by evidence, that it has installed and is now installing standard pipes, mains and equipment and does not know and cannot say where the electric current which has heretofore caused electrolysis in its pipes originated, that

its pipes are located in the streets at a depth and distance from the rails of the power company, as recommended by the city, except at one short distance where the mains of the company are closer to the rails than the distance recommended by the city, and at that particular point it has experienced no trouble from electrolysis.

It would serve no useful purpose to examine or comment upon the evidence. The commission has made no finding of fact. It suffices to say that it is not clearly disclosed from what source the current originates which causes the electrolysis of the service pipes. The mains of the water company are not seriously affected. The trouble seems to be largely in the service pipes which emanate from the main on Bluefield avenue. The mains and service pipes extending over the entire city in a network, all connected, form excellent conductors for any electric current which may have escaped into the earth from any source, and we gather from the expert testimony that wherever this electric current so gathered by the pipes leaves the same at any particular point there the electrolysis or disintegration of the pipe occurs. This trouble from electrolysis has been experienced in all municipalities where electricity is used, and the methods of controlling it are yet in an experimental stage, about which experts differ. The science of electricity is very much in its infancy. But we have wandered from the question presented, namely, the jurisdiction of the public service commission to entertain and remedy such complaints.

It is claimed by the city that under section 4 of chapter 15-0 of the Code, the commission has authority to hear and determine the complaint involved. That section provides: "Every person, firm or corporation engaged in a public service business in this state, shall establish and maintain adequate and suitable facilities, safety appliances or other suitable devices, and shall perform such service in respect thereto as shall be reasonable, safe and sufficient for the security and convenience of the public, and the safety and comfort of its employees, and in all respects just and fair, and without any unjust discrimination or preference." It is under the clause "safe and sufficient for the security and convenience of the

public," as found in the above quotation, that counsel for the city predicate the authority of the commission to take jurisdiction. We cannot so construe that clause. Taken with its context it means that the suitable facilities, safety appliances or other devices used by a public service corporation to perform the public service, shall be safe for the security and convenience of the public as well as for the safety and comfort of its employees. It must operate its business with reasonably safe appliances for those who use them. Its duty in that regard is to the public which it serves and to its employees. Public service commissions were created in response to the demand for an administrative body, possessing quasi judicial and legislative powers, as a convenient tribunal to stand between the patrons and customers of public utilities and protect the public on the one hand from unjust and unreasonable rates and tolls and unreasonable practices, and on the other hand to regulate public service utilities and award to them a substantial return upon the investment used and useful in their business. The appliances used in the public service shall be suitable, convenient and sufficient for the security and convenience of those who are served as well as for those who are engaged in the service of the utilities. Good and safe service for a reasonable return upon the investment is one of the basic ideas on which the legislation is based. An informal, inexpensive and quick method is provided, before a quasi judicial tribunal. It will be noted that no question arises here upon the safety of the appliances or methods used, or of inadequate or unreasonable service, or of oppressive or unreasonable rules and regulations. There can be no question from the record presented that both of the public utilities are using the best facilities which they can reasonably obtain and are adequately serving the public. Speaking of the public service commission, Judge POFFEN-BARGER said in his concurring opinion in *Gas Co.* v. *Public Service Commission*, 73 W. Va. 592: "It is an administrative board of statutory origin, possessing quasi judicial and legislative powers. It derives its power and jurisdiction wholly from the statute. Such power as is not given by the

statute it does not have. Nor has it any power in those instances in which any statute or the common law or the constitution expressly or impliedly withholds or denies jurisdiction to it. Manifestly there are many limitations upon its jurisdiction, and that the legislature intended to vest power in this court to enforce them is plain.'' Here, the city is asking the commission to prevent these utilities acting under franchise from the city, from damaging its streets. The public service commisions generally throughout the states, under statutes somewhat similar to ours, have consistently refused to exercise jurisdictoin over such questions. A somewhat similar situation arose before the public service commission of this state, then composed of distinguished lawyers, Elliott Northcott, E. F. Morgan and W. M. O. Dawson, in 1915, in which the city of Follansbee was complainant and the Manufacturers Light and Heat Company respondent. Before the city of Follansbee was incorporated, a subsidiary company of the Light and Heat company had obtained a franchise from the county court to lay its gas pipe lines along the public road, with the consent of the abutting land owners, a portion of which road was afterwards included in the corporate limits of the city afterwards chartered. The city, by ordinance, required sewers, pipe lines, water lines and the like to be laid in the alleys instead of in the streets; and it complained to the commission that the Light and Heat company had refused to obey its ordinance and was continually digging up the paving of the streets in order to reach its mains and service pipes in order to render service to its customers in the city, and by that means was destroying the streets. The commission refused to take jurisdiction and grant relief. *Follansbee* v. *Mfg. Light & Heat Co.*, 1915D Pub. Util. Repts. 825. The Colorado public utilities commission, in the case of *Charles W. Taylor* v. *City of Glen Springs*, 1921E Pub. Util. Repts. 526, decided it had no jurisdiction with respect to the damaged condition of a street occasioned by the leakage of water undermining said street, and the holes excavated therein in the work of repairing the pipe line; and that it had no jurisdiction over the repairs

or improvements in a water main except upon complaint
of a patron of the utility that the leaks were responsible for
an inadequate, insufficient, or impure supply of water. Like-
wise, the public service commission of Pennsylvania, in the
case of *Bowers* v. *Spring Hill Water Co.,* 1919 C Pub. Util.
Repts. 951, held that the failure of a water company properly
to repave openings made for mains is a matter for the atten-
tion of the municipality, rather than the public service com-
mission. In *City of Yakima* v. *Pacific Power and Light Co.,*
1921 C Publ. Util. Repts., 730, the Washington commission
held that it had no jurisdiction to order the removal of a
wooden water main from a street or to order the laying of
a metal pipe in its place, unless such change was necessary
to enable the company to render safe, adequate, and efficient
service at a reasonable cost to its patrons. It held that the
question of the location of a water main for the protection
of the pavement is a matter to be settled between the munici-
pality and the water company without the intervention of the
commission. The commission construed the section of law
under which the complainant claimed it had jurisdiction in
the light of the general purpose of the act, which, it said,
concerned itself primarily with public service furnished by
a utility and with the relations of the company with the
public in respect to service. The commission said that only
two contingencies would give the commission jurisdiction to
entertain the complaint; (1) that the existing pipe line was
inefficient and inadequate to render satisfactory service to
the patrons; (2) that to permit the wooden water main to
remain and be covered by pavement would necessitate such
an increase in maintainance charges over and above the fixed
charges on the investment necessary to make the change, as
to be reflected in the rates for service, to the detriment of the
company's patrons. While these cases cited are not decisions
of the courts, they are persuasive as coming from commissions
composed largely of men learned in the law, and of everyday
experience with the questions involved under similar legisla-
tion; and from which there seems to have been no appeal to
the courts. We are cited to our case of *State ex rel Croy* v.
*Water Works Co.,* 86 W. Va. 260, as authority for the propo-

sition that the commission should take jurisdiction of this complaint. That case has little relevancy. The controversy was over a rule or regulation made by the company to the effect that no connection should be made to the water mains for water service to a patron unless the connection was made by a plumber specially licensed by the water company to perform such work; and that no water would be turned on unless the specially licensed plumber had performed the service for the applicant. This court held that it would not act by mandamus to compel the water company to turn on its water where such connections had been satisfactorily made by a competent plumber other than the one licensed by the respondent, until complaint had been made to the public service commission, which had jurisdiction over the practices, rules and regulations of the public service corporation, in respect to its service to the public. Judge LYNCH referred to section 7 of the act which makes it unlawful for any company to give any undue or unreasonable preference or advantage to any particular person, firm or corporation, or to subject them to any undue or unreasonable prejudice or disadvantage. The regulation and supervision given to the commission over such utilities is to prevent unjust or discriminatory rules and practices in its service to its patrons; and clearly the commission has jurisdiction of all such matters relating to the methods and practices of a utility in performing its service to the public.

Under the charter creating the city of Bluefield and under the general laws, that municipality has full power to open, close, pave and protect its streets and pavements from damages by any person using the same. It is a part of its police powers which it cannot contract away. The rule is well stated in Pond on Public Utilities, sec. 410, as follows: "The proper exercise of the police power permits the municipality as well as the state independent of any franchise grants or statutory authority that may be conferred either upon the public service corporation or the municipality to protect the interests of the public in the reasonable use and enjoyment of the streets and highways for which they were dedicated and in the interest of the public to conserve the public health

and the general welfare and convenience of the people. Under the rule which is universally accepted, the municipality has not the power to abridge or surrender its rights to perform its duties to the public, especially in maintaining its streets for the advantage of the public as a means of transportation and communication, and the municipal officers cannot bind their successors in the proper discharge of such duties, because such powers are legislative and cannot be abridged.'' We do not think the public service commission act has taken from the city of Bluefield any of its police power to properly maintain and protect its streets from damage or from interference with the public use and travel thereover. We do not think it was the intention of the legislature in creating the public service commission to give to it jurisdiction to protect the streets of a municipality from damage and thus divide or abridge the police powers of the municipality in that regard.

The order of the public service commission dismissing petitioner's complaint will not be suspended nor vacated.

*Order of suspension refused.*