## In re MADISON RYS. CO.

## MADISON RYS. CO. v. CITY OF MADISON.
### Nos. 6693, 6732.

Circuit Court of Appeals, Seventh Circuit.
March 9, 1939.

William Ryan and R. J. Sutherland, both of Madison, Wis., for appellant.

Harold E. Hanson, of Madison, Wis., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal is prosecuted from an order of the District Court in a proceeding, instituted by appellant, the debtor, under Section 77B of the National Bankruptcy Act, 11 U.S.C.A. § 207. The order was a partial allowance of appellee's claim for appellant's share of the cost of paving street railway zones, and of removing presently existing rails from certain streets in the City of Madison. The claim was filed September 30, 1936, and was in two parts. The first section of claim 1 related to paving zones, already completed by the city, during the years 1928 and 1929 inclusive, and was for the sum of $4,499.41; the second section of claim 1 related to covering tracks by the city on Capitol Square, at various intersections and on certain main highways, in 1935 and 1936, and was for the sum of $9,417.-80. The second claim was for $224,000, which was alleged to be appellant's share of the cost of removing presently existing rails from other streets, and paving the railroad zones. This part of the claim was based on the city engineer's estimate and was made because the debtor was alleged to have discontinued the use of street cars and abandoned the tracks. It was further alleged that the removal of such rails and poles was necessary for the safety and welfare of the city.

The matter was referred to a master who recommended the disallowance of the claim for $4,499.41 because barred by the statute of limitations. This the city concedes to be correct. He further recommended that the claim for $9,417.80 be allowed, and that the claim for $224,000 "be not now allowed in that amount but without prejudice to claimant." He also recommended that appellee "as creditor in definite 'amount, and as creditor in unliquidated amount * * * be permitted to participate as a creditor in this reorganization proceedings, on the same basis as other creditors, to the end that its rights against Debtor may be preserved." Appellant filed many exceptions to the master's report with respect to findings of fact, conclusions of law and recommendations. These were overruled and the court rendered its findings of fact and conclusions of law, confirming the master's report, and rendered judgment in accordance therewith. With respect to the unliquidated part of the claim the court ordered: "That the claim of said city in the sum of $224,000 for the estimated cost of the removal of debtor's tracks and repaving of the track zone be disallowed in that amount with the right of the city to recover from the debtor the reasonable expense it may incur if and when it removes debtor's tracks from its streets."

The pertinent facts disclosed by the record are substantially as follows:

On June 10, 1892, the City of Madison granted to Madison City Railway Company, of which the debtor is the successor, a franchise to construct and operate a street railway system within its limits for a period of forty years. It was granted subject to all applicable general provisions of the Wisconsin Statutes then in force, and to such reasonable rules and regula-

tions respecting streets and highways as the city council might enact. It further provided that the company should keep the space between the rails of each track and for a space of one foot on the outside in proper repair so as not to interfere with travel over it, and should keep it in proper order and cleanliness at its own expense.

In 1919, the legislature enacted what is now known as subsection (2) of section 193.46 of the Wisconsin Statutes (1937), as follows: "(2) Every company owning a street or interurban railway system in this state shall be deemed to have surrendered all existing licenses, permits or franchises and to have accepted in lieu thereof an indeterminate permit pursuant to sections 193.33 to 193.44, unless on or before January 1, 1920, such company filed with the [public service] commission [of Wisconsin] a notice that it elected not to accept an indeterminate permit for its system." The debtor never filed a notice of non-election to accept an indeterminate permit.

On May 8, 1923, the city by ordinance relieved the company of its obligation to pay for the cost of paving the zones referred to in the original franchise, and in lieu thereof required it to pay 25 per cent of such cost. This ordinance contained the following provision:

"This ordinance shall in no manner be so construed as to relieve the Madison Railways Company, its successors or assigns from maintaining and keeping in repair that portion of the pavement between the rails of each track and for the space of one foot on the outside of the rails when any street or portion thereof shall have been paved or otherwise permanently improved, it being understood that this area on all streets upon which the railway company is now operating shall be maintained and kept in repair at the expense of the said railway company."

The company operated street cars on its tracks by electricity up to 1928 when it began to operate buses on some lines. After February 23, 1935, it ceased using electric cars and operated buses over all routes formerly serviced by street cars and also on additional routes. There was never any council action authorizing or approving the abandonment of any of these car tracks, except on one line, although the city had knowledge of such abandonment and its officers and representatives seemed to be quite gratified over the fact, and at no time raised any objection thereto. The work was done progressively, and buses were substituted, pursuant to orders of the Wisconsin Public Service Commission. The wires were all taken down in 1935, and the last of the poles were taken down in the spring of 1936.

From August 4, 1933, to October 13, 1936, the Commission entered sixteen different orders relating to the operations of the debtor. The first grew out of a hearing originally involving investigation of rates and fares of the debtor, upon the petition of a number of citizens, which was afterward joined in by appellee. Later, on June 8, 1933, at a hearing on these petitions, the debtor filed with the Commission a proposal to substitute buses as the base service on one of its lines. An order entered August 4, 1933, pursuant to the petition, recites that the company is not earning enough to rebuild the track, and expresses doubt whether the track should be rebuilt or whether other transportation facilities, such as buses, should be installed. Thereupon the Commission ordered the debtor to substitute buses in furnishing base service on that line, using street cars for handling rush hour traffic. The next order granted appellant's petition to abandon the use of cars as a base service upon another line, and to operate buses instead, upon conditions quite similar to the first order. Subsequently, the Commission entered the other fourteen orders all of which relate to bus routes over the various streets, except one which relates to the requirement of four additional buses, and the fixing of the bus fares at five cents. Four days after this order car service was wholly discontinued. At all of these hearings, save one relating to a routing, the city appeared and was represented by its attorney.

In June, 1933, when the debtor decided to purchase buses, its general manager so notified the mayor in the presence of the city engineer, attorney, and a member of the water department. The mayor said the city would make no objection. The manager informed them that the debtor would take down the poles and wires, but, as all the money the company earned would be required to purchase buses, he would have to ask the city to assume the responsibility for the tracks. No agree-

ment, however, on this subject was arrived at, and the city never authorized such an agreement by corporate action. A similar conversation was had by these same parties in the winter of 1933 and 1934 when a five cent fare was under discussion, with the same result. The city appointed a transportation committee in the summer of 1934, which made its report to the common council recommending a five cent fare but said nothing about the tracks. When this report went to the Public Service Commission the debtor advised the council that it was prepared to make the change to a five cent fare. It went into effect October 1, 1934. It was authorized temporarily on September 27, 1934, and was prescribed as the legal fare on February 19, 1935.

On May 15, 1934, the common council by resolution permitted appellant to remove and not replace its tracks at the junction of two streets, which, the resolution recited, would amount to an abandonment of that branch of the system. In the summer of 1934, the city, with federal aid, paved a part of three streets. No request was made of the debtor to remove the rails, and the contractor retained them. In the same year the debtor removed its tracks on two streets at its own expense. On May 8, 1936, the common council ordered the debtor to remove all trolley wire poles, and this was done. All other of the debtor's tracks are imbedded in the streets as originally constructed.

The city and its officers were aware of the gradual abandonment of the car tracks and trolleys and of the substitution of the bus transportation, however, no formal action was taken by the city council with respect thereto. The Public Service Commission likewise had knowledge of a partial abandonment by the debtor of its street railway system and the change to bus service, but its records disclosed no formal action by that body authorizing the abandonment of the entire system.

In addition to what we have heretofore said, the debtor was required by its franchises to repair any and all damages done to the streets by reason of the construction or repairing of the debtor's tracks; to save the city harmless against claim for damages from the construction, repair or management of its railway system; and to raise or lower its tracks so as to conform to any changes in the grade of the streets. Neither the terms of the franchises nor any ordinance adopted by the city specifically imposed upon the debtor the duty to remove its tracks, trolleys, poles and wires from the city streets upon the termination of its franchises. No notice was given by the city to the debtor to remove its tracks from the city streets except that contained in the brief submitted by the city in the District Court.

In 1935, the debtor did not have sufficient funds to enable it to remove all or any material part of its tracks. It had been in failing circumstances for a number of years, of which fact the city had knowledge. For this reason the city was quite willing to have the transportation system changed from electric cars to buses, and this record discloses that at all times the city was quite lenient in pressing the performance of the debtor's obligations because of the debtor's financial inability to perform them.

Appellant contends that the issues before the master and the District Court were whether the city's claim had not been previously determined by the Public Service Commission, pursuant to the statute relating to abandonment of street car lines and service thereon, or whether the claim was to be allowed by the master and court as a claim de novo upon common law principles. Under this view of the issues, appellant takes the position (1) that because the franchise had been changed to an indeterminate permit by section 193.46, the franchise did not terminate or expire, and the debtor was authorized to abandon the car lines and service by orders of the Commission pursuant to section 196.81 of the Wisconsin Statutes; (2) that section 196.81 of the Statute vested the Commission with authority to impose such terms, conditions or requirements as in its judgment were necessary to protect the public interest upon the abandonment of the lines and service, hence the District Court was precluded from exercising jurisdiction over the subject matter; (3) that since the Commission had not required the removal of the debtor's tracks from the streets as a condition to the abandonment, the court was without authority to grant the city the right to recover from the debtor the reasonable expense incurred if and when it removes the debtor's tracks from its streets; that the claim for $9,417.80 for covering the tracks at certain places is likewise controlled and governed by the

section of the Statute just referred to; and (4) that in any event under its franchise the duty of the debtor while operating cars was limited to keeping the zones above referred to in proper repair so as not to interfere with travel over them, and to removing the tracks if the franchise terminated or expired, hence the city cannot recover for covering the tracks on certain parts of the streets without proof that those zones were out of repair at that time, and without proof that the city notified the debtor to make such repairs and that it failed to do so after the lapse of a reasonable time, and without proof that the city requested the removal of tracks, and that the debtor did not within a reasonable time comply with such request.

We are first met with appellee's contention that the first three questions here attempted to be presented may not be considered on this appeal, because they were not presented or preserved at the hearing before the master. We think the record does not support appellee's contentions in these respects, although we are convinced that this conclusion will avail appellant nothing in the determination of the questions presented.

The principal question before us is whether the enactment of section 196.81 of the Wisconsin Statutes (1933) which was enacted in 1931, divested the city of its right to enforce by court order or decree, under common law principles, the obligations due it from appellant under its original, franchise, and the indeterminate permit, with respect to the repair of the track zones, and the removal of the tracks after abandonment.

It is clear that appellant's duty, both under the original franchise and the indeterminate permit, was to keep its zones in repair; and it is conceded that under the common law it was its duty, upon the abandonment of its tracks and service, to remove its tracks and to restore the streets to their former condition. Appellant, however, contends that since the original franchise, which would have expired in 1932, was changed to an indeterminate permit in 1920, it never expired; and it further contends that this record does not disclose any order of the Commission which authorized the abandonment of the entire system and service. This record does disclose, however, that the entire system and service were physically abandoned by the debtor with the knowledge and cordial approval of both the Commission and the city, and there were formal orders of the Commission authorizing the abandonment of two branches of the system. If there were no such order, appellant places itself in the position of having violated the statute, for it could not abandon any part of either its tracks or service without the approval of the Commission. It is obvious that the Commission intended to permit the debtor to abandon its entire system, and there is nothing in the record to indicate a contrary intention, except the fact that there does not appear in the Commission's record a formal order to that effect. The debtor, the city and the Commission evidently thought the order had been made. That is what each party wanted done, and all parties concerned were quite pleased with the result. Their subsequent conduct conclusively proves that they each relied upon the assumption that the entire system was authorized to be and was legally abandoned. Certainly, under these circumstances, appellant would not be permitted to re-establish and operate its electric service, if it so desired. However, it does not wish to do so, but it is merely attempting to use the lack of a formal order of abandonment, which has been effectuated, as a defense to an alleged obligation in favor of the city. This it will not be permitted to do. This conclusion is quite consistent with the debtor's contention that it was authorized to abandon its car lines and service by orders of the Commission pursuant to section 196.81 of the Wisconsin Statutes.

The debtor urges, however, that since that statute vested the Commission with authority to impose such terms, conditions and requirements as in its judgment were necessary to protect the public interest upon such abandonment, it had the effect of divesting the city of any right to enforce by court action any obligation under its franchise or the common law, with respect to the repair or removal of its physical property from the streets, and by the same token the District Court was precluded from exercising jurisdiction over the subject matter. Hence, it argues that since the Commission did not require the removal of the debtor's tracks as a term, condition or requirement of abandonment, the court was without authority to grant to the city a right to recover from the debtor the rea-

sonable expense it may incur if and when it removes the debtor's tracks from the streets.

The creation of public service commissions for the purpose of regulating public utilities has been uniformly construed as restricting such jurisdiction to the matters of service, rates, schedules and the like, and as not extending to the repair of track zones or the removal of rails. These latter matters have been quite uniformly held by both commissions and courts to be subjects of proper municipal regulations enforceable by appropriate judicial remedies.[1] It is quite true that most of the Wisconsin cases on this subject were decided before the enactment of section 196.81 upon which appellant relies, but we find nothing in that enactment which indicates an intention to divest the city of its former police power in the regulation of its streets or to deprive it of its former right to enforce by court order the obligations of a street railway company to repair its tracks, and to remove them upon abandonment.

■ Obviously the city it still required to keep its streets repaired, and if it is negligent in this respect it is still liable for damages proximately resulting therefrom. Likewise the debtor was and still is liable for its negligence or willfulness in failing to meet its obligations in this respect under its franchise and permit. There is no doubt that Wisconsin, by legislative enactment, might have abrogated the common law liability of the debtor with respect to its obligation to remove its tracks after abandonment, but we think it did not do so. The fact that section 196.81 vested the Commission with authority to impose terms, conditions and requirements upon which the abandonment would be authorized, we think should not be construed to give the exclusive power to the Commission to enforce the obligations of the debtor with respect to repairs of the streets and the removal of the

tracks, and the mere fact that the Commission failed to impose such terms, conditions and requirements should not be considered as relieving the debtor from those obligations, or depriving the proper courts from enforcing them.

■ We are further convinced that the city was not required to notify the debtor that the track zones were in need of repair and request the debtor to make the repairs before it repaired them. The necessity we think was plain. The track was abandoned and left in the street by the debtor. It amounted to more or less of an obstruction to the public use. Of this we may take judicial notice. The debtor knew these facts and it was obligated to remove its tracks after the abandonment. It was the duty of the city to keep its streets in repair and to remove obstructions, and it could not relieve itself from liability by contracting with the debtor to perform those services. In case of injury through negligence in not repairing the zones or removing the tracks, both the debtor and the city might have been held liable as joint tort-feasors, and in such event we apprehend that the debtor could not successfully. defend on the ground that it had not been notified of the necessity of the repairs, or that it had not been requested to make the repairs. The debtor knew of the conditions, and both it and the city were bound to know what they could have ascertained by the exercise of ordinary care. The city knew its duty, and obviously sensed the situation, for it repaired certain zones by covering the abandoned tracks with cement. This evidently served the purpose for which it was intended and certainly was less expensive than removing the tracks. Under these circumstances we think the court rightly allowed the city's claim for $9,417.80.

■ We are further of opinion that the court did not err in preserving the city's right to recover from the debtor the rea-

[1] Madison Railways Co. v. Railroad Comm., 184 Wis. 164, 198 N.W. 278; Re Reading Street Railway Co., P.U.R. 1932D, 498; In re Wisconsin Gas & Electric Co., P.U.R.1918E, 752; Janesville Traction Co. v. Janesville, P.U.R. 1918E, 446; Marinette v. Menominee & Marinette Light & Traction Co., P.U.R. 1927E, 708; In re Janesville Traction Co., P.U.R.1925A, 404; Milwaukee Electric R. & L. Co. v. Milwaukee, P.U.R. 1919D, 504; Milwaukee v. Milwaukee R. & L. Co., P.U.R.1933A, 484; City of Bluefield v. Public Service Commission, 94 W.Va. 334, 118 S.E. 542; City of Wilson v. Weber, 101 Kan. 425, 166 P. 512; Borough of Swarthmore v. Public Service Commission, 277 Pa. 472, 121 A. 488; State ex rel. Tacoma Railway & P. Co. v. Public Service Commission, 101 Wash. 601, 172 P. 890.

184

sonable expense it might incur if and when it removed the debtor's tracks from the streets. This was a voluntary proceeding in bankruptcy for reorganization under Section 77B. In adopting a plan it was quite necessary to care for unliquidated as well as liquidated claims. Unless this obligation was considered and provided for in this reorganization, it would be precluded from subsequent consideration and participation. Hence we think the court rightly recognized the unliquidated claim, and protected it by the proper order.

The order and judgment are affirmed.