# CHARLESTON.

MARTHA J. HARRIS v. ISIDORE F. POULTON *et al.*

(C. C. 349)

Submitted April 14, 1925.   Decided April 21, 1925.

1.  MUNICIPAL CORPORATIONS—*Ordinances Prohibiting Erection of Garages, Unless Built of Fireproof Construction, Held Valid Exercise of Police Power.*

    The provisions of Part II, paragraph 2, section 4, paragraph 33, section 7, and Part III, paragraph 4, section 11, of the

municipal ordinances of the City of Wheeling, among other things prohibiting the building, raising, altering or removal of certain classes of buildings contrary to the provisions of the Building Code, and defining "garage" included therein, and prohibiting the erection of such garages within said city unless built of fireproof construction, and prescribing penalties for the violation of said ordinances, constitute a valid exercise of the police power of the municipality.   (p. 24).

(Municipal Corporations, 28 Cyc. p. 736).

2.  SAME—*Police Power to Protect Against Fire Exists Inherently in Municipality.*

Such a police power in a municipality respecting protection against fire is properly referable to specific legislative authority if conferred, or to the general welfare provisions of the municipal charter, and it exists inherently in the municipal authorities as necessarily implied from the general powers granted in respect thereto.   (p. 26).

(Municipal Corporations, 28 Cyc. p. 736).

3.  NUISANCES—*Adjoining Landowner May Recover Damages for Erection of Garage Contrary to Ordinances.*

And when the owner of a lot in the municipality, in violation of such an ordinance, erects on his lot a garage of inflammable materials within a section devoted exclusively to residential purposes, to accommodate a large number of automobiles, and lets the stalls therein to owners thereof for storage, with their gasoline fuel tanks and oils and greases therein, with right of ingress and egress at all hours of the day and night, to the disturbance of the rest, peace and quiet of tenants on the adjoining lots, thereby greatly increasing the fire hazard and rates of insurance on the adjoining properties, and depreciating the actual and rental value thereof, the owner or owners of the adjoining property so specially damaged may maintain an action at law against the owner of such garage for the damages sustained. (p. 28).

(Nuisances, 29 Cyc. p. 1165).

NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.

Action by Martha J. Harris against Isidore F. Poulton and others.  After sustaining a demurrer to declaration, the Court certified rulings.

*Demurrer overruled.*

*Tom B. Foulk* and *J. M. Ritz,* for plaintiff.
*Handlan, Garden & Matthews,* for defendants.

MILLER, JUDGE:

Plaintiff, being the owner of two houses and the lots on which they are located, situated on the south side of Ohio Street, City of Wheeling, in that section known as Wheeling Island, a section devoted exclusively to residential purposes, brought this suit against defendants, owners of a lot fronting thirty feet on said street and running back to an alley 120 feet, and adjoining one of plaintiff's lots, to recover damages alleged to have been sustained by her, by the building and operation by defendants on their lot of a garage, in violation of the provisions of an ordinance of said city, known as the Building Code.

The court below sustained defendants' demurrer to the declaration, and certified its rulings thereon to us for our judgment thereon. The grounds of the demurrer were:

1. The declaration does not charge actionable negligence in the erection of the building complained of.

2. The declaration does not charge that this building, or the use which is being made of it, constitute actionable negligence.

3. The construction and maintenance of the building in violation of the ordinance pleaded, does not give rise to the liability in favor of the plaintiff against the defendants.

In argument here counsel for defendants affirm four several propositions in support of their demurrer, as follows:

1. The declaration shows on its face that the ordinance is invalid in so far as it attempts to regulate buildings in excess of its charter powers to regulate the erection and construction of buildings.

2. The declaration fails to allege facts sufficient to show that the regulation of the erection and construction of the building in question was within the powers of council.

3. The declaration fails to show a cause of action in that the construction and maintenance of buildings in violation of an ordinance does not give a right of action in favor of the plaintiff against the defendants where a specific penalty is provided in the ordinance in question.

4. The declaration is defective even though a personal right of action is given the individual for violation of a municipal ordinance, yet in order to sustain a declaration, facts must be pleaded which show that the plaintiff suffers special damages in a special manner different in kind and not in degree from the damages suffered by the general public.

It is observed that the declaration is not predicated on negligence, assigned in the first and second grounds of demurrer. The building as substantially described in the declaration, consists of two side walls and a back wall of glazed tile, built on the property lines, about ten feet in height, the declaration alleges, with a court or drive way in the center, opening out on Ohio Street, the roof and inside walls of the stalls being built of wooden rafters and sheeting with tar paper covering, supported by wooden posts, with wooden doors enclosing some twenty-eight stalls opening out into the roadway or court, in such a way as to provide for the ingress and egress of automobiles stored therein, said roof sloping slightly from the court or roadway on either side towards the side walls of said building.

The declaration alleges that defendants constructed and maintained said building over the protest of plaintiff, in violation of the provisions of said Building Code, without having previously obtained the required permit or approval of the Superintendent of Building Construction, as required by paragraph 6, section 5, part II, of said Building Code.

And by way of assigning special damages incurred by plaintiff by the alleged unlawful construction of said building, it is averred; first, that ever since the completion thereof, about February or March, 1920, defendants have rented to various individuals the stalls thereof, for the purpose of storing automobiles therein, and that there have been, are now, and will continue to be stored in said garage a large number of automobiles in excess of three, which contain gasoline, greases and other inflammable materials, rendering the said building highly inflammable, and liable to cause a conflagration; second, that the tenants of defendants, at unseemly hours of night, that is to say, between ten o'clock P. M. and two o'clock A. M., go in and out of their respective

stalls in said garage, and make loud and unseemly noises in starting and stopping their machines, so that said tenants occupying plaintiff's houses are disturbed in their sleep and rest thereby; third, that by reason of said structure, and the operation thereof as alleged, the fire hazard to plaintiff's property has been greatly augmented, the rate of insurance greatly increased, and the actual and rental values thereof greatly decreased, and which will continue to decrease over what they otherwise would be but for the construction and operation of defendants' garage, to her damage ten thousand dollars.

Of the provisions of the Building Code pleaded and relied on as having been violated and as entitling plaintiff to the relief sought, part II, paragraph 2, section 4, is as follows:

"No building already erected, or hereafter to be built, shall be raised, altered, moved or built upon in any manner that would be in violation of any of the provisions of this Code, or the approval issued thereunder."

Part II, paragraph 33, section 7, defining a garage, is as follows:

"Garage. A garage is (a), that portion of a structure in which a motor vehicle containing volatile inflammable oil in its fuel tank is stored, housed or kept; (b), all that portion of such structure that is on, above, or below the space mentioned in (a), which is not separated therefrom by tight, unpierced firewalls and fireproof floors."

That portion of part III, paragraph 4, section 11, which under Class F includes "garages accommodating more than three cars," provides that: "Buildings of this class, such as garages (as herein defined), oil houses, oil refineries, rendering plants, smoke houses, varnish works, etc., and buildings or portions of buildings which are used for the storage or handling of large quantities of combustible packing or refuse material, shall be only of fireproof construction. All other buildings of Class F shall be of fireproof or mill construction if within the fire limits or if they exceed 55 feet in height."

The main proposition relied on by defendants in connection with these provisions of the municipal code are: first, that in so far as they or either of them relate to structures

under ten feet in height, they exceed the charter powers of the municipal council; second, that if valid, they give no right of action in favor of a property owner for damages common to all, and not special, for violation of the ordinance.

The section of the charter, chapter 21, Acts 1915, regular session, referred to, is as follows:

"Section 55. The council may, by ordinance, prohibit the erection within any square or squares of the city, of any building, or any addition to any building, more than ten feet high, having in the foundation or outer walls thereof, or the outside covering of the roof thereof, any wood or other combustible material; and provide for the removal of any building or addition which shall be erected contrary to such prohibition, at the expense of the builder or builders, or owners thereof."

It is argued upon the authority of *Parkersburg Gas Co.* v. *Parkersburg*, 30 W. Va. 435, and *State* v. *Godfrey*, 54 W. Va. 54, that the powers of a municipal corporation must be strictly construed, and if there is any reasonable doubt as to existence of the power, the doubt should be resolved against it. As we have observed, the averment of the declaration is that defendants' garage is "about" ten feet high, not that it exceeds ten feet in height. "About" may mean over or under ten feet. If the powers of the municipality are actually limited by this provision of its charter, of course it could not by prescribing a lesser height lawfully exceed its powers. Section 57 of the city charter, a general welfare provision, gives the council "authority to pass all ordinances not in conflict with the constitution and laws of the United States, or of this state, which shall be necessary and proper to carry into full effect any power, authority, capacity or jurisdiction which is or shall be granted to, or vested in, the said city, or in the council or any officer of said city, and to provide for the enforcement of any or all of their ordinances by reasonable fines and penalties," etc. There is a provision in section 28, chapter 47 of the Code, relating to cities, towns and villages generally, giving to the council, among other powers, the right "to make regulations guarding against danger or damage by fire;" and but for the exception of the City of

Wheeling, in section 1 of said chapter 47, from the right to exercise the powers conferred on other municipalities by the general law, we might find the authority to enact the ordinance here in question in this general law. We decided in *City of Charleston* v. *Reed,* 27 W. Va. 681, that under such general provision in its charter the City of Charleston was empowered to make an ordinance establishing fire limits and prohibiting the erection of wooden buildings within such limits. The ordinance involved here does not establish zones or districts for its operation: it is apparently applicable to every part of the territory within the municipal boundary. Protection against fire ought to be, and generally is, one of the principal objects of municipal government. If we are unable to find specific authority for the ordinance, either in the charter or general law, the question is presented whether it may not in this instance be referred to some inherent power of the municipality, and so render the violation of the ordinance as alleged, unlawful, and the building in question a public or private nuisance, and remediable by an action at law for damages. In addition to the charter powers referred to, we find in section 33 of the Greater Wheeling Charter, such general powers as these: ''The council may by ordinance require and compel the abatement and removal of all nuisances within said city at the expense of the person, or persons, causing the same, or the owner, or owners, of the ground whereon the same shall be; * * * and, generally, to prevent such conduct in the city as is prejudicial to the comfort, health, convenience, safety, peace and good order of said city or the inhabitants thereof, and to make and ordain appropriate provisions and penalties for the enforcement of all lawful regulations of said city, respecting the matters hereinafter in this section mentioned.''

While it may not be beyond doubt whether the specific authority to enact the ordinance in question can be found in these various provisions of the charter, we find very high authority for the proposition that when it relates to such an important subject as protection against fire, the authority is regarded as inherent in the municipality, independently of statute. It was so decided in *Kaufman* v. *Stein,* 138 Ind. 49,

55, basing the proposition on 15 Am. and Eng. Enc. Law, p. 1170, and the authorities there cited, including *Clark* v. *City of South Bend,* 85 Ind. 276; *Baumgertner* v. *Hasty,* 100 Ind. 575; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; and Kent's Com. 339. It is said in 15 Am. and Eng. Enc. Law, cited, with reference to the cases cited to the contrary, that: ''The decided weight of athority in this country is, that municipal corporations have the power, under the general welfare clauses usually contained in their charters, without express legislative grant, to establish fire limits, forbidding the erection of wooden buildings,'' etc. And in the case of *Clark* v. *South Bend, supra,* it is said: ''There can be no. doubt that the legislature meant to confer broad powers upon municipalities in the matter of providing against danger from fires.'' We are disposed to go with what seems to be the weight of authority in holding that in so important a matter as protection against fire a municipality has the inherent right to establish all reasonable and proper rules and regulations, and this independently of specific legislative sanction.

If such is the law, then there can be no doubt of the legality of the ordinance in question. And if legal, then defendants' garage is unlawful and constitutes a continuing nuisance, and punishable in favor of the public by the fines imposed.

But the question is here presented whether the plaintiff has right of action against defendants for the damages alleged to be specially sustained to her property, in increased hazards by fire, the inconvenience and discomfort of herself and tenants, impairment of actual and rental values, etc.

The learned judge below based his ruling on the demurrer on the general proposition that where a statute or ordinance commands something to be done by a property owner and prescribes a penalty for its omission, the limit of the offender's liability is that prescribed by the statute, and that a private person has no right of action against him, certainly not unless specially damaged and is given the right to sue by the statute itself. The cases relied on by the court below for this proposition are, *City of Hartford* v. *Talcott,* 48 Conn. 525; 40 Am. Rep. 189; *Taylor* v. *R. R. Co.,* 45 Mich. 74, opinion by Cooley. J.: *Moran* v. *Pullman Co.,* 134 Mo. 641; *Sanders* v. *South. Elect. Ry. Co.,* 147 Mo. 411, opinion by Marshall, J., 426, 427,

428; *Phila. & Read. R. R. Co.* v. *Ervin,* 89 Pa. St. 71, 33 Am. Rep. 726; and *Teeney* v. *S. Sprague,* 11 R. I. 456, 23 Am. Rep. 502.

It was the principle of these cases that was relied on by defendants on the hearing here. We do not think that the proposition is decisive of the case in hand. Those cases all, we believe, related to laws or ordinances requiring of abutting property owners some duty with respect to obstructions or defects in the streets, and against which the municipality itself was bound to protect the public and individuals using the same. In all such cases the right of action is against the municipality and not against the owner of the abutting property, unless the legislative authority has given such right.

In the case here the offense, if the ordinance is valid, is *malum prohibitum.* The defendants were commanded not to erect on their property a garage accommodating more than three cars unless of fireproof material. They ·disregarded the ordinance and, according to the declaration, built one of inflammable material to accommodate twenty-eight cars, and so near to plaintiff's property as to damage her in the manner alleged. Has she any remedy, or the remedy invoked, of an action at law against defendants for damages? We think she has, assuming of course that the facts are as alleged in her declaration. We do not decide that the ordinance would be reasonable and enforceable in all cases, not within lawfully prescribed fire limits. Whether the plaintiff's property is within such· fire limits is not alleged. But it is alleged that the section in which her property is located is devoted exclusively to residential purposes, and that the garage is built within such close proximity to her residential properties as to subject them to great fire hazard, and damages them as alleged. In the recent case of *State ex rel. Oil Service Co.* v. *Stark,* 96 W. Va. 176, 122 S. E. 533, we decided that a city ordinance similar in character to the one involved here should be upheld as a reasonable exercise of the police power of the municipality. In Joyce on the Law of Nuisances, §14, relating to Public and Private Nuisances, it is said that, "the fact that numbers are injured does not make the nuisance such a common one as to exclude redress by private remedy from a single individual. Nor is there in this respect any difference

in the nature or character of the thing itself; that which is a public nuisance and which annoys the public generally or invades its rights, constitutes a private nuisance where an individual, or class of individuals, sustains as such, special injury as distinguished from that sustained by the public, and redress in such case exists by way of private remedy." And says Coleman, J., in *Kinney* v. *Koopman et al.*, 116 Ala. 310, 37 L. R. A. 497, 67 Am. St. Rep. 119: "The difference between a public nuisance and a private nuisance does not consist in any difference in the nature and character of the thing itself. It is public because of the danger to the public. It is private only because the individual, as distinguished from the public, has been or may be injured. Public nuisances are indictable. Private nuisances are actionable, either for their abatement, or for damages, or both. * * * Whatever constitutes a public nuisance as to the public will constitute a private nuisance, if established so as to have the same effect upon the premises or health of a private person as it would have upon the public, if established in a city or highway. The constituents and definitions of a nuisance, whether public or private, are the same." In our own case of *Bartlett* v. *Grasselli Chemical Co.*, 92 W. Va. 445, 453, Judge POFFEN-BARGER says: "There is no ground upon which an individual or purely private corporation can be accorded right to maintain and continue in force a business, structure or other agency working injury to the property of another, in such manner and to such extent as to constitute a private nuisance, if the injury so wrought is such as impairs or destroys the enjoyment or value of the property, or is deemed by the law to be irreparable and not compensable in damages." Citing many cases. In the same case it is further said: "In addition to the right of direct judicial abatement, the injured party has the right of coercion to abatement by the wrongdoer himself, by means of repeated recoveries of damage. If asserted before the right to maintain or continue the injurious act is acquired by prescription, these rights of recovery are unlimited in respect of time. Almost every pure nuisance is regarded in law as being continuous." In *Aldrich* v. *Howard*, 7 R. I. 199, a well considered case, opinion by Ames, C. J., involving the identical question involved here, the liability of defendant to plaintiff

for breach of a fire ordinance, the Chief Justice said: "We have no doubt that when a statute makes the doing or omitting any act illegal, and subjects the offending party to penalties for the public wrong only, a party specially injured by the illegal act or omission has the right of suing therefor at the common law." And the right, if founded on no other ground, may perhaps be referred to the old statute of Westminister 2nd, which was designed to afford a remedy for every wrong.

We have at least one case in this court where injunctive relief was applied to restrain a nuisance created by the operation of a skating rink by defendant on land adjacent to that of plaintiff, and where the chief ground of complaint was the noise and the disturbance of the plaintiffs and their tenants from the operation of the business. We refer to the case of *Snyder* v. *Cabell,* 29 W. Va. 48. Quoting from *Adams* v. *Michael,* 38 Md. 123, it is said in that case: "A court of equity will interfere by injunction to restrain an existing or threatened nuisance to a dwelling-house, if the injury be shown to be of such a character, as to diminish materially the value of the property as a dwelling and seriously interfere with the ordinary comfort and enjoyment of it, if it appear to be a case where substantial damages could be recovered at law." Numerous other cases of this character are reviewed by Judge JOHNSON in the opinion in that case, affirming the same doctrine. In *Bangs* v. *Dworak et al.,* (Neb.), 5 L. R. A. (N. S.) 493, it was decided that injunction will issue to prevent the erection of buildings in violation of a municipal ordinance, though they are not nuisances *per se,* if the persons seeking such injunction show that their erection will work special or irreparable injury to them and their property. While the erection of a lawful building, though it may increase the cost of insurance, constitutes no ground for injunction, yet if the proposed building is being erected contrary to law, equity will enjoin it at the suit of one sustaining special injury therefrom. See cases cited in the note to *Bangs* v. *Dworak, supra.*

Our conclusion is, from the authorities cited, that the plaintiff's declaration presents a cause of action remediable at law, and that defendants' demurrer thereto should be overruled.

*Demurrer overruled.*