S. A. PHILLIPS, *Trading and Doing Business, etc., et al. v.*
THE CITY OF MORGANTOWN

(No. 9264)

Submitted February 3, 1942. Decided March 17, 1942.

*John D. Downs* and *George R. Farmer,* for appellant.
*Kermit R. Mason,* for appellees.

Fox, PRESIDENT:

Early in the year 1941, the City of Morgantown, by an
ordinance of its common council, adopted "Daylight Sav-
ing time," and thereafter on June 24th, adopted a further
ordinance providing that "it shall be the duty of all per-
sons holding licenses or permits from the City of Morgan-
town to conduct the business or things to be done under
said licenses or permits according to 'Daylight Savings
Time' instead of Eastern Standard Time, in all cases
where the hours of doing business under said license or
permit are restricted according to time, and in all such

cases 'Daylight Savings Time' shall be substituted for Eastern Standard Time."

S. A. Phillips and Mike Cotgagorge, plaintiffs below, each held a license issued by the State Tax Commissioner, permitting them to sell nonintoxicating beer, under the provisions of Chapter 12 of the Acts of the Legislature, Regular Session, 1937, Code 1937, Chapter 11, Article 16. Failing to comply with the terms of the ordinance above mentioned, criminal proceedings were instituted against them, and they sought and obtained a temporary injunction against the enforcement of the said ordinance. The trial court, on hearing, awarded a permanent injunction against its enforcement, holding the same to be beyond the powers of the common council to adopt, and from this action, the city prosecutes this appeal.

We think the question at issue must be determined by construction of the statute under which the state granted plaintiffs their license to sell nonintoxicating beer. The City of Morgantown possesses no inherent police powers. *Bissett* v. *Town of Littleton,* 87 W. Va. 127, 104 S. E. 289, 20 A. L. R. 1478; *Kelley* v. *City of Grafton,* 87 W. Va. 191, 104 S. E. 487. Police power is an attribute of state sovereignty, an indefinable reservoir of power necessary to government, and which, under our system, is exercised by the people either by grant under the constitution, or by legislative enactment, and may be delegated, through either process, to agencies of government. It is true that in *Harris* v. *Poulton,* 99 W. Va. 20, 127 S. E. 647, 40 A. L. R. 334, it was held that the right to make an ordinance respecting fire protection "exists inherently in the municipal authorities as necessarily implied from the general powers granted in respect thereto." And notwithstanding the discussion of the question, we do not think it was intended to hold that a municipal corporation, independently of other powers granted, possesses inherent police powers. "The prevailing view in this country is that the police power of municipalities exists solely by virtue of legislative or constitutional grant. In some American cases, particularly those dealing with such important police functions as protecting the public health or guard-

ing the public safety from such dangers as fire hazards, there have from time to time appeared statements, intimations, and dicta that certain police powers are inherent in municipalities from the very fact of their organization. Many of these broad statements can be explained on the basis that the courts really had in mind implied powers, as the entire context of the opinions shows, and in the various jurisdictions where such broad statements concerning inherent municipal police powers have been made in certain opinions, the courts on numerous other occassions and in later opinions have reiterated the well-established American doctrine that municipal corporations have such police powers only as are expressly given or necessarily implied." 37 Am. Jur. 902.

Taking up the nonintoxicating beer statute, which we hold must govern, we find that section 3 thereof provides: "No person shall manufacture, sell, possess for sale, transport or distribute nonintoxicating beer except in accordance with the provisions of this act, and after first obtaining a state license therefor, as hereinafter provided." Section 12 provides that license may be issued by the Tax Commissioner to any person who submits an application accompanied by a license fee and make oath to certain facts. Section 13 provides that "It shall be unlawful: (a) For any licensee, his, its or their servants, agents or employees to sell, give or dispense, or any individual to drink or consume, in or on any licensed premises or in any rooms directly connected therewith, nonintoxicating beer between the hours of midnight and seven o'clock the following morning." These sections, read together, do more than merely restrict a right. Under a license issued under the provisions of the act, a licensee has the right to sell nonintoxicating beer at all times, except as restricted thereunder, the restriction being that beer could not be sold between the hours of midnight and seven o'clock the following morning, and, of course, this restriction is intended to apply to every day in the year. The court takes judicial notice that the time customarily observed in the State of West Virginia, at the date of the act in question, was Eastern Standard Time, and the

Legislature will be conclusively presumed to have intended its enactment to have reference to the time customarily observed throughout the state. It is not necessary in this case to examine the authority of the Tax Commissioner, by rules or regulations, to change the rule as to time to be observed. However, rules and regulations, made effective as of July 1, 1941, which was after the date of the ordinance in question, but before the institution of this suit, and which, on the record, is shown to be a codification of existing rules, were promulgated by the Tax Commissioner, one of which provides that "The hours during which beer may be sold as provided in section 13-a of the Beer Law shall be governed by Eastern Standard Time." Presumably, this particular regulation, which did nothing more than reiterate legislative intent, was promulgated under section 14 of the act, providing that: "To effectively carry out the provisions of this article the tax commissioner shall have the power and authority to adopt, promulgate, repeal, rescind and amend, in any manner required, rules, regulations, standards, requirements and orders, including the following: * * *." The power granted specifically as to certain rules which he may promulgate do not include the prescribing of the time within which beer may be sold, but it may be that the specific powers so granted do not exclude other necessary powers. By section 18 of the act, the administration thereof is vested in the Tax Commissioner "to whom is hereby given all necessary power and authority in the premises; * * *."

But the question here is not so much the powers of the Tax Commissioner, but rather those of the common council of the City of Morgantown, under section 17 of the nonintoxicating beer act. That section provides that "Any municipal corporation in this state shall have authority to levy a license tax under the provisions of this act upon any retailer, distributor or brewer of nonintoxicating beer whose place of business is situated within such municipality, but the amount of the license tax levied by such municipal corporation shall in no event exceed the amount fixed herein to be levied by the state: * * *." And then

further provides that "Cities and incorporated towns are hereby empowered to enact ordinances for the enforcement of this act in conformity with the provisions of the same." This section does not authorize the City of Morgantown to do more than impose a tax upon the business of selling nonintoxicating beer. However, subdivision (i) of section 7, article 4 of the Charter of the City of Morgantown, Chapter 126, Acts of the Legislature, Regular Session, 1933, provides that "The council may by ordinance require city license for persons conducting and carrying on any business or vocation in the city for which the state may now or hereafter require license." Therefore, the city was within its delegated powers in granting a license, and in adopting ordinances controlling the exercise thereof, to the extent that the same conformed to the general statutes regulating the business to which such license related. The decisive question here is whether the City of Morgantown, in adopting the ordinance in question relating to "Daylight Saving Time" encroached upon the legislative enactment. Municipalities are creatures of the Legislature, and it is elementary that the creature cannot nullify or even encroach upon the rights and powers of the creator. The Legislature having adopted a policy with respect to the sale of nonintoxicating beer, must be held to be supreme in that field, and any rights exercised by the municipalities throughout the state must conform to that legislative policy. It is not necessary to consult dictionaries to reach the conclusion that the ordinance of the City of Morgantown, which not only prohibits the sale of beer for one hour, from 11:00 o'clock P. M. to midnight, during which the Legislature, in effect, said beer could be legally sold, but further provides that beer might be sold during one hour, from 6:00 o'clock A. M., to 7:00 o'clock, A. M., during which period the Legislature said beer could not be legally sold, is not in conformity with the legislative act, but is in direct conflict therewith. This being true, it necessarily follows that the common council of the City of Morgantown had no power to adopt and enforce the ordinance in question.

The decree of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*