STATE OF WEST VIRGINIA *ex rel.* E. EARL BIBB

*v.*

GEORGE B. CHAMBERS, *Mayor, Etc.*

(No. 10616)

Submitted July 29, 1953. Decided July 30, 1953.

*Scherer, Bowers* and *File* and *W. H. File, Jr.*, for petitioner.

*W. T. O'Farrell*, for respondent.

RILEY, JUDGE:

The relator, E. Earl Bibb, hereinafter designated as the "petitioner", invoking the original jurisdiction of this Court, instituted this proceeding in mandamus of State of West Virginia ex rel. E. Earl Bibb against George B. Chambers, Mayor of the City of Beckley, to require the respondent mayor to sign and take such other steps as may be necessary for the issuance of public utility revenue bonds, as provided for in an ordinance adopted by the Common Council of the City of Beckley on July 1, 1953, which issue of revenue bonds was for the purpose of financing an extension of existing parking facilities in the City of Beckley by the construction of a municipal parking lot, and providing that the cost of construction be paid on a self-liquidating basis from the revenues derived from the operation of the parking facilities; and as further security for the cost of construction the ordinance provides for the pledge of the net revenues from on-street parking meters owned and maintained by the City of Beckley.

This Court on July 30, 1953, the return day of the rule herein, entered an order awarding the peremptory writ prayed for, and providing that at a later date the Court would file an opinion stating the reasons which prompted the entry of this order: accordingly, this opinion is filed.

The ordinance adopted by the Common Council of the City of Beckley on July 1, 1953, was entitled: "AN ORDINANCE providing for the acquisition, construction, operation and maintenance of additional automobile

parking facilities in and for the City of Beckley, West Virginia, and for the issuance of revenue bonds in connection therewith, setting forth the terms and conditions upon which said bonds are to be issued and outstanding, and providing for the collection, segregation and distribution of income and revenues from the operation of such undertaking so as to pay said bonds and interest thereon". Following its passage the ordinance was published once a week for four successive weeks in two newspapers of opposite political faiths of general circulation in the City of Beckley, namely, The Raleigh Register, a democratic newspaper, and The Beckley Post Herald, a republican newspaper. The publication gave notice that a public hearing on the ordinance would be available to all interested parties at seven-thirty p. m., on Monday, July 20, 1953, at the City Hall in the City of Beckley, the time set for the hearing being not less than ten days after the first publication of the ordinance on July 6, 1953. At the public hearing held on July 20, 1953, pursuant to publication of the ordinance, all persons in interest had an opportunity to appear before the council and be heard on the question whether the ordinance should be put into effect. At the hearing no written protest, as required, was filed by more than thirty per cent of the owners of real estate situated in the City of Beckley, and no material opposition was made on the part of any substantial group of citizens; so that thereupon and thereby, as the petition alleges, the ordinance became and was in full and valid effect, and the council adopted a resolution declaring that the ordinance of July 1, 1953, was duly adopted by the Common Council of the City of Beckley, and was in full and valid effect.

The petition further alleges that on July 20, 1953, the Common Council of the City of Beckley, pursuant to Section 3, Chapter 68, Acts of the Legislature, 1935 (Michie's West Virginia Code of 1949, Anno., 8-4A-3), adopted an ordinance entitled "AN ORDINANCE providing for the management, control and operation of the municipal public automobile parking facilities of the City of Beckley.",

which ordinance created a board of commissioners for the purpose of managing, controlling and operating the municipal public automobile parking facilities, provided for in the bond ordinance of July 1, 1953.

The petition alleges that for approximately three years the City of Beckley has been engaged in a proceeding in eminent domain for the purpose of acquiring a large piece of unimproved property, situated adjacent to the principal business section of the City of Beckley, owned by various persons. The purpose of the proposed taking of the property was the construction of a three hundred fifty-car parking lot at an estimated total cost of four hundred sixty-five thousand dollars, and thereby to relieve an alleged critical parking space shortage in the City of Beckley. It is alleged in the petition that there is no property in the City of Beckley other than that sought to be acquired in the proceeding in eminent domain suitable for the construction of public automobile parking facilities; and that the construction of such facilities can be financed only in the manner provided in the bond issue adopted on July 1, 1953.

The petition further alleges that the Common Council of the City of Beckley by the bond ordinance of July 1, 1953, has found that:

(1) The City of Beckley has before the enactment of the bond ordinance installed curb-line parking meters and established rules for their use and operation in order properly to regulate and control traffic upon the congested streets within the city, and in connection with the establishment, use and operation of the curb-line parking meters the city has and is imposing a fee for parking by motor vehicles on the congested streets of the city;

(2) The existing traffic conditions within the commercial streets of the City of Beckley necessitate and require that additional automobile parking facilities be acquired, constructed, maintained, and operated by the city to relieve traffic congestion, prevent the abuse of parking

privileges, increase parking privileges, accelerate the free movement of traffic, and, as a part of the municipal traffic system of the City of Beckley, to promote public safety, convenience and welfare;

(3) It is deemed by the Common Council of the City of Beckley advisable, necessary and for the best interests of the city to construct self-supporting municipal public works, consisting of additional automobile parking facilities, with appropriate appurtenances, to accommodate approximately three hundred and fifty automobiles on the property in the City of Beckley lying between Prince Street on the north; Neville Street on the south; Walnut Lane on the west; and Campbell Court on the east, and adjacent to a portion of both sides of a proposed extension of First Avenue in the city, as shown by maps on file in the office of the city recorder, prepared by the city engineer;

(4) It is necessary that provision be made for the establishment, construction, and operation of such additional automobile parking facilities, and for the issuance of revenue bonds in the amount of $465,000.00 to finance such construction; and

(5) The bond ordinance of July 1, 1953, was adopted for the purpose of confirming the acquisition and construction of the proposed additional automobile parking facilities, to set forth the provisions, conditions and restrictions upon which the revenue bonds are to be issued and outstanding, and to express the stipulations, covenants, and undertakings for the collection, segregation and distribution of the income and revenues from the project to pay the cost of operation and maintenance and the interest and principal requirements on the revenue bonds.

Section 6 of the bond ordinance of July 1, 1953, which in particular the respondent mayor, George B. Chambers, deems invalid, reads:

"It is hereby determined by said city that

the facilities afforded by the project will substantially facilitate motor vehicular traffic upon the commercial streets within said city upon which curb-line parking meters have been heretofore and may be hereafter installed and maintained, and if and whenever in any month after the project has been completed and placed in operation the gross income and revenues of the project shall be less than the actual expenses of operation, repair and maintenance of such project for such month plus 130 per cent of the minimum amount herein provided to be paid into the sinking fund during each month, payment into the Parking Facilities Revenue Fund for the benefits thereby derived in an amount equal to such deficiency shall be made from the revenues from such curb-line parking meters after allowance for the cost of acquisition, maintenance and operation of such meters. It is hereby represented by said city that curb-line parking meters hereinbefore referred to will necessarily be continuously maintained and operated through the life of the bonds herein authorized, provided however, that such representation shall not be construed to prohibit appropriate changes in the location of parking meters in the city made necessary by street widening or street closing nor to prohibit substitution or changes in the location of parking meters to provide essential and necessary traffic regulation and control, so long as any such changes or substitution will not materially lessen the amount of revenues derived from such parking meters."

The respondent, George B. Chambers, Mayor of the City of Beckley, the petition alleges, has refused, and is refusing, to sign the revenue bonds and carry out the other steps necessary to complete the project in all necessary particulars, and has assigned his reasons for such refusal, which, according to petitioner's brief, give rise to the following issues:

1. Can curb-line parking meters be maintained by the City of Beckley under the provisions of Chapter 68, Acts of the Legislature,

Regular Session, 1935, as amended by Section 1, Article 4-a, Chapter 90, Acts of the Legislature, Regular Session, 1945, and as amended and reenacted by Section 1, Article 4-a, Acts of the Legislature, Regular Session, 1951, and Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, Regular Session, 1951, as amended and reenacted by Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, 1953, (Article 4a, Chapter 8 of the West Virginia Code) as a revenue producing undertaking, as distinguished from a traffic control and regulatory measure under the police powers to the extent and for the purposes set forth in the bond ordinance;

2. If the said City of Beckley may legally operate its curb-line parking meters for the purposes aforesaid, can the municipality agree to thereby realize a minimum annual amount to the extent provided in the bond ordinance and effectively pledge the net revenue therefrom to cover any deficit in the requirements of the bonds issued for the off-street parking facilities provided for in the bond ordinance; and

3. Is such a pledge in effect a combining and consolidating of the on-street and off-street parking facilities for financing purposes and if so, is this authorized by law?

Paraphrasing the language used by counsel for the petitioner in their brief, the sole overall question is whether, under the provisions of Section 1, Chapter 68, Acts of the Legislature, Regular Session, 1935 (incorporated in Michie's Code, 1937, as Article 4A of Chapter 8), as amended by Chapter 90, Acts of the Legislature, Regular Session, 1945, and Chapter 136, Acts of the Legislature, Regular Session, 1951, and Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, Regular Session, 1951, as amended and reenacted by Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, the City of Beckley, acting through its common council, is empowered to pledge the net revenues from on-street curb-line parking meters,

owned and maintained by the city, as security for the payment of revenue bonds for the construction of the parking facilities, and in furtherance of that purpose agree to maintain minimum revenues from the on-street curb-line parking meters to the extent necessary to guarantee the repayment of the revenue bonds and the interest thereon, in accordance with the bond ordinance of July 1, 1953.

This question, in the main, involves the meaning and effect of Section 1-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, which provides that:

"Section 1-a. *Municipal Parking Facilities.* —Every municipality shall have the authority to establish, operate and finance automobile parking facilities, including buildings, lots and other facilities appropriate for that purpose, and such facilities shall be public works within the meaning of this article.

"Whenever any municipality shall establish any such parking facility and shall create a board or commission as provided in section three of this article which shall have supervision and control thereof, then in order to help finance the same, such municipality shall have the authority to pay over to such board or commission any revenue derived from parking meters or other parking facilities, unless such revenue is otherwise pledged to pay for such meters or parking facilities."

As heretofore indicated, this provision was first incorporated into the statutory law of this State by the enactment of Chapter 137, Acts of the Legislature, Regular Session, 1951, and later amended by Chapter 134, Acts of the Legislature, 1953, in the manner as above quoted.

Initially it may be noted that the use of municipal parking meters for the purpose of regulating traffic on the streets and alleys of municipal corporations, as distinguished from the raising of revenue, is of modern origin in this State.

Code, 8-4-10, and, as last amended by Section 10, Article 4, Chapter 66, Acts of the Legislature, Regular Session, 1941, conferred upon the municipalities of this State the general power to regulate the use of streets, alleys, lanes and sidewalks; and the Legislature by the enactment of Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, in the exercise of the police power for the first time by general law delegated to municipal corporations the power to regulate or forbid the parking of vehicles on the streets, alleys or public thoroughfares of the municipalities of this State.

In *County Court of Webster County* v. *Roman,* 121 W. Va. 381, syl., 3 S. E. 2d 631, this Court, in applying Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, to an ordinance of the Town of Addison, (familiarly known as Webster Springs, the name of its post office,) providing for the installation of parking meters upon certain streets of the town, held that "Under Code, 17-8-32, [Section 32, Article VIII, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933,] authorizing an incorporated town 'to regulate * * * the parking of vehicles upon any designated streets [streets, alleys and thoroughfares not designated by the state road commissioner as connecting parts of the primary road system]', the town council has the power to install parking meters on such streets. The action of the council thereon, unless arbitrary or fraudulent, is beyond judicial control."

At common law a municipal corporation is vested with authority under its police power reasonably to regulate the use of the streets and other public ways by public service corporations, acting under franchises from the municipalities. *State ex rel. City of Benwood* v. *Benwood & Mc-Mechen Water Co.,* 94 W. Va. 724, 120 S. E. 918; *City of Bluefield* v. *Public Service Commission,* 94 W. Va. 334, 118 S. E. 542; 2 Pond, Public Utilities, Fourth Edition, Section 506. This universally accepted postulate of the common law is stated in 2 Pond, Public Utilities, (4th

Ed.), Section 506, as follows: " * * * the municipality has not the power to abridge or surrender its right to perform its duties to the public, especially in maintaining the streets for the advantage of the public, as a means of transportation and communication and the municipal officers cannot bind their successors in the proper discharge of such duties because such powers are legislative and can not be abridged." Subject to this exception a municipal corporation possesses no inherent police power and has only such regulatory power as has been expressly or impliedly conferred by the Constitution or delegated to it by the Legislature. *Law* v. *Phillips,* 136 W. Va. 761, 68 S. E. 2d 452; *Hayes* v. *Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726, 156 A. L. R. 702; *Phillips* v. *City of Morgantown,* 124 W. Va. 170, 19 S. E. 2d 603; *State ex rel. Kelley* v. *City of Grafton,* 87 W. Va. 191, 104 S. E. 487; *Judy* v. *Lashley,* 50 W. Va. 628, 41 S. E. 197, 57 L. R. A. 413.

In State ex rel. *Holbert* v. *Robinson, Mayor, etc.,* 134 W. Va. 524, 59 S. E. 2d 884, this Court held that the words "automobile parking buildings" in Section 1, Chapter 90, Acts of the Legislature, Regular Session, 1945, amending Section 1, Chapter 68, Acts of the Legislature, Regular Session, 1935, include public automobile parking facilities proposed to be financed by revenue bonds under an ordinance of the City of Fairmont, adopted on May 1, 1950, entitled "AN ORDINANCE making provisions for the issuance of $175,000 Parking Facilities Revenue Bonds of the City of Fairmont, West Virginia, * * * ". The holding of this Court in that regard is based upon the postulate that Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended by Chapter 90, Acts of the Legislature, Regular Session, 1945, was enacted in the exercise of the police power of the State, and should be liberally construed to effectuate the purpose, that is, the alleviation of congested parking conditions in the municipalities of the State. In the *Holbert* case this Court referred to and applied the provision of Section 27, Chapter 68, Acts of the Legislature,

Regular Session, 1935, which section is also applicable to this case, that "This act being necessary for the public health, safety, and welfare, shall be liberally construed to effectuate the purposes thereof."

That Section 1, Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended by Section 1, Article 4-a, Chapter 90, Acts of the Legislature, Regular Session, 1945, and Section 1, Article 4-a, Chapter 136, Acts of the Legislature, Regular Session, 1951, were enacted in the exercise of the police power of the State cannot be gainsaid. *State ex rel. Holbert* v. *Robinson, Mayor, etc., supra.*

Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, Regular Session, 1951, as amended by Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, having as its underlying purpose the alleviation of congested parking conditions in municipalities, was likewise enacted by the Legislature in the exercise of the police power vested in it.

The ambiguity contained in Section 1, Chapter 90, Acts of the Legislature, Regular Session, 1945, involving the use of the words "automobile parking buildings", having been resolved by the construction of the statute in *State ex rel. Holbert* v. *Robinson, Mayor, etc., supra,* and having been deleted from the statute by the enactment of Section 1, Chapter 136, Acts of the Legislature, Regular Session, 1951, in which the words "automobile parking facilities (including parking lots, buildings, ramps, curb-line parking, meters and other facilities deemed necessary or incidental to the regulation control and parking of automobiles)" were substituted for the words "automobile parking buildings", contained in Section 1, Chapter 90, Acts of the Legislature, Regular Session, 1945; and the Common Council of the City of Beckley having by the ordinance of July 20, 1953, created a board with power to supervise and control the proposed parking facilities, if and when constructed, the first ques-

tion before us is whether Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, effectively delegated to the municipal corporations of this State, including the City of Beckley, the power to pledge revenues from on-street parking meters or other parking facilities, not otherwise pledged to pay for such on-street parking meters or other parking facilities, to secure the cost of the construction and operation of the off-street automobile parking facilities and the payment of the principal and interest on the revenue bonds authorized by the bond ordinance of July 1, 1953.

We are of opinion and so hold that the Legislature by the enactment of Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended, effectively delegated to the City of Beckley and other municipalities of the State the power to acquire and operate the proposed off-street parking facilities and finance the cost thereof by the issuance of bonds secured by the proposed off-street automobile parking facilities and the revenue derived therefrom. To the effect that the Legislature may delegate the exercise of the police power to a municipal corporation, subject to the control of the courts only to the extent that the courts have the power to act, see *Hayes* v. *Town of Cedar Grove, supra.*

In a number of cases this Court has held that a municipality may finance a municipal public works from revenues derived from the operation thereof under the legislative delegation of the police power to the municipalities of the State by virtue of Chapter 68, Acts of the Legislature, Regular Session, 1935, and its various amendments. The most recent case is that of *State ex rel. Holbert* v. *Robinson, Mayor, etc., supra.* See also *Duling Brothers Co.* v. *City of Huntington,* 120 W. Va. 85, 196 S. E. 552, involving the construction of a flood wall by the City of Huntington, and the financing thereof by the issuance of municipal bonds; *Chapman* v. *Huntington, West Virginia, Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502, involving the construction by the Huntington

Housing Authority of a slum clearance project and the financing thereof by revenue bonds; and *Warden* v. *The City of Grafton,* 125 W. Va. 658, 26 S. E. 2d 1, involving an ordinance of the City of Grafton providing for the construction of a municipal hospital by the City of Grafton, the financing thereof by the issuance of a series of revenue bonds, made a "statutory mortgage lien" on the hospital and the equipment thereof and on all future additions thereto, and the financing of the completion of the hospital by the pledge of all of the net profits derived therefrom to secure the payment of the bonds and the interest thereon.

The question whether a municipal corporation may, under the provisions of Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, 1951, as amended and reenacted by Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, agree to and effectively pledge the net revenue derived from the operation of on-street parking meters, not already pledged, to pay the costs of the construction and operation of a public works, constructed under Chapter 68, Acts of the Legislature, Regular Session, 1935, and to help meet the requirements of revenue bonds issued to finance off-street parking facilities, is presented to this Court for the first time.

The amendment of Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, 1951, by the enactment of Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, 1953, is not material to the issues involved herein, as Chapter 134 merely substitutes the words "any municipality" for the words "any class one city."

The City of Beckley having in conformity with Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, Regular Session, 1951, as amended and reenacted by Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, appointed a commission to supervise and control the off-street automobile parking facili-

ties, when constructed, and the common council of the city having adopted the bond ordinance of July 1, 1953, this case raises the question whether the provisions of Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, Regular Session, 1951, as amended and reenacted by Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, 1953, are sufficiently broad to empower the municipalities of this State to pledge the revenues derived from on-street parking meters, not otherwise pledged, to help finance such off-street automobile parking facilities, including the payment of the principal and interest on the revenue bonds issued for the purpose of financing the construction of the proposed automobile parking facilities.

Applying the liberality rule stated in *State ex rel. Holbert* v. *Robinson, Mayor, etc., supra,* and applicable to all remedial statutes, we are constrained to interpret the provisions of Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, to provide that a municipality, which has appointed a commission to supervise off-street automobile parking facilities, is so empowered.

As the controlling purpose which prompted the Legislature to enact in the first instance Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended, and later to enact Chapter 134, Acts of the Legislature, Regular Session, 1953, amending Chapter 137, Acts of the Legislature, Regular Session, 1951, was the financing of municipal public works constructed and financed under Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended, we are persuaded to be of the opinion that the words contained in Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, "such municipality shall have the authority to pay over to such board or commission any revenue derived from parking meters or other parking facilities", should be construed to include the right to pledge revenues derived from on-street parking meters, not otherwise

pledged, to help finance the proposed automobile parking facilities, including the payment of the principal and interest on the revenue bonds. The words contained in this section " * * * unless such revenue is otherwise pledged to pay for such meters or parking facilities", strongly imply that the Legislature intended to empower municipal corporations, in supplementing the financing of off-street automobile parking facilities, constructed under Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended, to pledge any revenue derived from on-street parking meters or other parking facilities, not otherwise pledged, to pay for and help finance such off-street parking facilities, including the payment of principal and interest on revenue bonds issued to finance the proposed off-street automobile parking facilities. Such interpretation satisfies the liberality rule of construction applicable to the instant statutes. It carries out the very purpose for which Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended, and Chapter 134, Acts of the Legislature, Regular Session, 1953, amending and reenacting Chapter 137, Acts of the Legislature, Regular Session, 1951, were enacted. It is a cardinal rule governing the interpretation of statutes that the purpose for which a statute has been enacted may be resorted to by the courts in ascertaining the legislative intent. 17 M. J., Statutes, Section 38; *Bloyd* v. *Scroggins*, 123 W. Va. 241, 15 S. E. 2d 600: *Metropolitan Life Insurance Co.* v. *Hill*, 115 W. Va. 515, 177 S. E. 188; *Hall* v. *Baylous*, 109 W. Va. 1, 153 S. E. 293, 69 A. L. R. 527; *Altmeyer* v. *Caulfield*, 37 W. Va. 847, 17 S. E. 409; *Bott* v. *Hampton Roads Sanitation District Commission*, 190 Va. 775, 58 S. E. 2d 306.

Only a casual examination of the provisions of the ordinances of the City of Beckley, adopted by the Common Council thereof on July 1, 1953, and July 20, 1953, shows that both these ordinances have as their overall purpose the alleviation of congested parking conditions in the City of Beckley. In the bond ordinance of July

1, 1953, the Council of the City of Beckley made the findings of fact heretofore recited, the ones bearing most directly on the question whether the enactment of the ordinance is within the reasonable scope of the police power delegated to the City of Beckley by the Legislature in the enactment of Section 1, Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended, are finding No. (2), which found that the existing traffic conditions within the commercial streets of the City of Beckley necessitate and require that additional automobile parking facilities be acquired, constructed, maintained and operated by the city to relieve traffic and street congestion, prevent the abuse of parking privileges, increase parking privileges, accelerate the free movement of traffic, and, as a part of the municipal traffic system of the City of Beckley, to promote public safety, convenience and welfare; and finding No. (3) to the effect that the Common Council of the City of Beckley deemed it advisable, necessary and for the best interest of the City to construct a self-supporting municipal public works consisting of additional automobile parking facilities with appropriate appurtenances to accommodate approximately three hundred automobiles on the property owned by the City of Beckley and described by bounds in the ordinance of July 1, 1953. These findings of fact are not met by any contravailing allegations in the pleadings filed in this case, and they form the basis for the enactment of both the bond ordinance of July 1, 1953, and the ordinance of July 20, 1953, appointing a commission to supervise the additional parking facilities when constructed.

The findings of fact by the Common Council of the City of Beckley are legislative in their very nature, are in furtherance of the purpose which prompted the Legislature to enact Chapter 68, Acts of the Legislature, 1935, as amended, and Chapter 137, Acts of the Legislature, Regular Session, 1951, as amended. These findings of fact of the common council are to the effect that the existing parking facilities of the City of Beckley are

inadequate and that such inadequacy will be remedied by the construction of the automobile parking facilities proposed in the bond ordinance of July 1, 1953. To the effect that findings of fact by the council of a municipality or other legislative body, are not subject to judicial inquiry, see *La Follette* v. *City of Fairmont*, 138 W. Va. 517, 76 S. E. 2d 572; *Armbrecht* v. *Thornburg*, 137 W. Va. 60, 70 S. E. 2d 73. *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264. Point 4 of the syllabus of *Chapman* v. *The Huntington, West Virginia, Housing Authority*, 121 W. Va. 319, 3 S. E. 2d 502, should be modified to conform with the holdings of the Court in the last mentioned cases.

Relying upon the allegation contained in the petition that the on-street parking meters in the City of Beckley, which were originally installed in an attempt to control the parking problem in that city, have produced and will continue to produce an income greater than that required for the acquisition and maintenance of the meters, the respondent asserts that the ordinances of July 1, 1953, and July 20, 1953, are invalid on the ground that the city is not authorized, in the absence of specific legislative delegation to that effect, to charge fees for the use of on-street parking meters, which will produce revenues in excess of the cost of constructing and maintaining the meters. It is asserted that the whole system of financing the proposed automobile parking facilities is invalid, for the reason that the ordinances are revenue measures as distinguished from regulatory measures. It is axiomatic in the law of municipal corporations that a municipal corporation may not enact an excise tax in the absence of a legislative delegation of authority. *Shulick-Taylor Co.* v. *City of Wheeling*, 130 W. Va. 224, 43 S. E. 2d 54; Cooley on Taxation, 4th Ed., Section 125.

In *County Court of Webster County* v. *Roman, supra,* this Court in holding that Section 32, Article VIII, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, authorized the adoption of an ordinance by the Town of Addison, establishing parking meters and

providing fees for the use thereof for the purpose of regulating the parking of vehicles on the streets of the town, inferentially held that such meters may not be installed for revenue purposes. In *Board of Commissioners, etc.* v. *Local Government, etc.*, 133 N.J.L. 513, 45 A. 2d 139, the New Jersey Court held: "Thus, the parking meters were designed to aid in controlling the use of the public streets in the exercise of the police power; and it is fundamental that, while the meters may be employed to defray the expense of the general regulatory service, a municipality may not, under the guise of regulation, lay a license or privilege tax upon the use of the streets. The devotion of the meters to the raising of revenue is not a proper exercise of the police power. * * * ." See also *In Re Opinion of the Justices*, 297 Mass. 559, 8 N. E. 2d 179; *Hendricks* v. *City of Minneapolis*, 207 Minn. 151, 290 N.W. 428; *Brodkey* v. *Sioux City* (Iowa), 291 N.W. 171; *Wilhoit* v. *City of Springfield*, 237 Mo. App. 775, 171 S. W. 2d 95; *Owens* v. *Owens*, 193 S. C. 260, 8 S. E. 2d 339; *Foster's, Inc.* v. *Boise City*, 63 Idaho 201, 118 P. 2d 721; and Blashfield's Cyc. of Automobile Law, Perm. Ed., Vol. 1, pages 144 and 145.

In *Hendricks* v. *City of Minneapolis, supra,* the Minnesota Court observed that: "Finally, it is urged that the ordinance is a revenue and not a regulatory measure, because the fee for metered parking is excessive. The ordinance must stand if a regulation and fall if a tax. * * * ". In the case of *Foster's, Inc.* v. *Boise City, supra,* the Idaho Court, contrary to the position taken by the petitioner herein, held that if the operation of on-street parking meters is tied into the financing of a proposed municipal parking lot, the result would be that on-street parking meters would simply become a revenue raising adjunct to the proposed parking lot, and thereby the only excuse for on-street parking meters, namely, the regulation of parking, would be distorted so as to destroy its validity.

The ordinances of July 1, 1953, and July 20, 1953, have

the controlling purpose of relieving the congested parking conditions in the City of Beckley, which, as shown by the findings of the common council of the city, have resulted from an inadequate parking system. The ordinances, in our opinion, are regulatory and not revenue measures, and were enacted to promote, to use the language employed by the Legislature in Section 27, Chapter 68, Acts of the Legislature, Regular Session, 1935, "the public health, safety and welfare." As this record does not disclose that the fees to be charged by the municipality for the parking of motor vehicles on the proposed automobile parking lot and at the on-street parking meters are unreasonable and are designed to produce revenue in excess of that sufficient to cover the cost of constructing the off-street automobile facilities and the on-street parking meters and the operation thereof, the collection of fees for the use of the off-street parking facilities and on-street parking meters does not constitute an invalid levy of a tax. If and when a case comes before this Court, which presents the question whether a city may charge fees for parking under a system such as is proposed in the ordinances of July 1, 1953, and July 20, 1953, which are in excess of the cost of operating the off-street and on-street parking, the operation of the off-street parking facilities and on-street meters, and the cost of paying both the principal and interest on the proposed revenue bonds issued in the amount of $465,000.00, this Court will be at liberty to address itself to and decide that question.

We are of opinion to adopt the position of the Supreme Court of Ohio in the well considered case of *State ex rel. Gordon, City Attorney* v. *Rhodes, Mayor, et al.*, 158 Ohio St. 129, 107 N. E. 2d 206, in which the Supreme Court of Ohio, in the absence of a statute such as Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, authorizing, as we hold, that a municipal corporation has the power to pledge revenues derived from on-street meters, in order to help finance off-street parking facilities, the construction of which serves to

promote the public health, safety, and welfare, held in point 2 syllabus that: "Where fees charged by a municipality for the parking of motor vehicles on and off the streets are not unreasonable in amount or designed to bring to the municipality revenue other than sufficient to cover the cost and expense of providing necessary parking facilities for such motor vehicles on and off the streets of the municipality, the charging and collection of such fees will not represent the levy of a tax."

The holding of the Supreme Court of Ohio is consonant with the decisions in the great majority of American cases. *Parr, Wayne Village President* v. *Ladd, Wayne Village Clerk,* 323 Mich. 592, 599, 36 N. W. 2d 157, 8 A. L. R. 2d 357; *Poole* v. *City of Kankankee,* 406 Ill. 521, 94 N. E. 2d 416; *State* v. *City of Daytona Beach,* (Fla.), 42 So. 2d 764; *State of Florida* v. *City of Miami Beach,* (Fla.), 47 So. 2d 865; *Michigan Blvd. Building Co.* v. *Chicago Park District* (Ill.), 106 N.E. 2d 359; *Brodhead* v. *City and County of Denver* (Colo.), 247 P. 2d 140.

The question whether the ordinances of July 1, 1953, and July 20, 1953, are invalid on the ground that the ordinances are revenue measures, in that the revenues derived from both the off-street automobile parking facilities and from the on-street parking meters may exceed the cost of constructing and operating the off-street parking facilities and the on-street parking meters, is not in issue in this case, for the reasons that: (1) The record herein does not disclose that the revenues to be derived from the off-street parking facilities, when constructed, and the revenues derived from the on-street parking meters, will exceed the cost of operating the parking facilities and the parking meters; (2) the validity of the ordinance establishing the on-street parking meters in the City of Beckley is not raised by the pleadings in this case; and (3) whatever vice there may be in the ordinance providing for on-street parking meters on the ground that the revenues exceed the cost of oper-

ating the same, that vice, in our opinion, is dissipated by the effect of the ordinance of July 1, 1953, in merging the revenues to be derived from on-street parking meters with those to be derived from the off-street parking facilities.

Before closing this opinion, we observe that the fact that the City of Beckley by the ordinance of July 1, 1953, obligated itself to maintain the on-street parking meters was not a surrender of the police power, the exercise of which the Legislature by Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended, and Section 1-a, Article 4-a, Chapter 134, Regular Session, 1953, amending and reenacting Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, Regular Session, 1951, delegated to the municipalities of this State. Section 6 of the ordinance of July 1, 1953, specifically provides that: " * * * It is hereby represented by said city that curb-line parking meters hereinbefore referred to will necessarily be continuously maintained and operated throughout the life of the bonds herein authorized, *provided however, that such representation shall not be construed to prohibit appropriate changes in the location of parking meters in the city made necessary by street widening or street closing nor to prohibit substitution or changes in the location of parking meters to provide essential and necessary traffic regulation and control, so long as any such changes or substitutions will not materially lessen the amount of revenues derived from such parking meters.*" (Italics supplied.)

In the case of *Poole* v. *City of Kankankee, supra,* the Supreme Court of Illinois observed: " * * * the City has reserved unto itself a wide discretion in the matter of location, regulation and control, and that, while it has pledged itself to fix and collect reasonable fees and charges, it has not bound itself to fix any specific unalterable amount of fee or charge."

For the foregoing reasons we reaffirm the holdings of this Court, set forth in the order of July 30, 1953, over-

ruling respondent's demurrer to the petition herein, sustaining petitioner's demurrer to respondent's answer, and granting the relief prayed for in the petition, that:

(1) Section 1, Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended, and Section 1-a, Article 4-a, Chapter 137, Acts of the Legislature, Regular Session, 1951, as amended and reenacted by Section 1-a, Article 4-a, Chapter 134, Acts of the Legislature, Regular Session, 1953, are valid and constitutional as being within the valid exercise of the police power of the State;

(2) That the ordinance adopted by the Common Council of the City of Beckley on July 1, 1953, entitled "AN ORDINANCE providing for the acquisition, construction, operation and maintenance of additional automobile parking facilities in and for the City of Beckley, West Virginia, and for the issuance of revenue bonds in connection therewith, setting forth the terms and conditions upon which said bonds are to be issued and outstanding, and providing for the collection, segregation and distribution of income and revenues from the operation of such undertaking so as to pay said bonds and interest thereon;" and the ordinance adopted by the Common Council of the City of Beckley on July 20, 1953, entitled "AN ORDINANCE providing for the management, control and operation of the municipal public automobile parking facilities of the City of Beckley", have as their purpose the regulation of traffic in the City of Beckley, and are valid as constituting a reasonable exercise of the police power of the State delegated to the City of Beckley by the Legislature by the enactment of Chapter 68, Acts of the Legislature, Regular Session, 1935, as amended by Chapter 90, Acts of the Legislature, 1945, and Chapter 136, Acts of the Legislature, Regular Session, 1951, and by the enactment of Chapter 137, Acts of the Legislature, 1951, as amended and reenacted by Chapter 134, Acts of the Legislature, Regular Session, 1953;

(3) The grounds assigned by the respondent, George B. Chambers, Mayor of the City of Beckley, for his refusal to sign the revenue bonds provided for in the ordinances adopted by the Common Council of the City of Beckley on July 1, 1953, and July 20, 1953, and to do such other administrative acts as will bring about the issuance of the bonds and the furtherance of the project embracing the construction of the proposed public automobile parking lot in the City of Beckley, are insufficient to sustain the respondent Mayor's refusal in the foregoing regard;

(4) That the respondent mayor has the mandatory administrative duty under the allegations of the petition to sign the revenue bonds provided for in the ordinances adopted by the Common Council of the City of Beckley on July 1, 1953, and July 20, 1953, and to perform such other administrative acts as will bring about the issuance of the bonds, and the furtherance of the construction of the proposed parking lot; and that such duty may be enforced by a writ of mandamus; and

(5) The bonds provided for by the bond ordinance of July 1, 1953, when signed by the respondent mayor, as directed in the order entered herein on July 30, 1953, shall be valid obligations for the purpose for which they are issued.

For these reasons this Court entered the order of July 30, 1953, overruling respondent's demurrer to the petition herein filed, sustaining petitioner's demurrer to the respondent's answer, and granting the relief prayed for in the petition filed herein.

*Writ awarded.*